BURNS, WALKER & Co. v. E: F. TRUE.

No. 291.

**1. Cause of Action not Accrued When Suit Brought — Amendment.**—Where plaintiff sues before his cause of action has accrued, the defect may be cured by an amendment filed after the accrual of his right of action.

**2. Charge of Court.**—A charge of court which is without evidence to warrant it, and calculated to be misunderstood by the jury to the prejudice of the complaining party, constitutes error.

**3. Tender of Payment—Notes not Matured.**—Where notes bear interest from date, the owner has the right to decline a tender of payment made before their maturity, and a tender to the original payee is not valid if made after he has lawfully transferred the notes to a third party.

**4. Estoppel—Case Stated.**—B., holding notes of T. under an agreement that when the notes were paid he would convey to T. certain horses, transferred both the notes and the horses to a third person, claiming afterwards that he had forgotten the agreement with T., and also, that as T. knew of such contemplated transfer before it was consummated, and made no objection thereto, he was estopped. *Held,* that T. would not be so estopped unless he knew of such contemplated transfer, and knew also that B. had forgotten it, and was acting under the belief that he consented to the transfer.

**5. Suretyship—Voluntary Payment by Surety.**—W. gave his notes to B., and T. signed them as surety, under an agreement with B. that if he had to pay them B. would transfer to him certain horses. T. afterwards, without the consent of B., voluntarily paid the notes before maturity to a third person to whom B. had transferred them. *Held,* that this gave T. no right to claim a transfer of the horses from B., or damages in lieu thereof.

APPEAL from Potter. Tried below before Hon. B. M. BAKER.

Appellee, as plaintiff, brought this suit February 25, 1890, for $1400 damages for the alleged violation of a certain contract. His amended original petition, filed September 6, 1891, alleged, in substance, that on September 6, 1889, defendants and plaintiff owned the $\overline{\Lambda}$ brand of horses, numbering about 150 head, defendants owning an undivided one-third and plaintiff an undivided two-thirds interest therein. That plaintiff's interest was worth $2800, and the defendants' $1400. That defendants also owned another stock of horses, branded T, numbering about 25 head, worth $288. That on said date, defendants agreed with plaintiff that if he would execute to them three notes for $562.96 each, signed by himself and one James Wyness, payable respectively in ten, twelve, and fifteen months, bearing interest at 10 per cent from date, to be secured by a deed of trust on plaintiff's two-thirds interest in said $\overline{\Lambda}$ horses, that they would transfer to him the said T brand of horses, and on payment of said notes by plaintiff, would also transfer to him their one-third interest in said $\overline{\Lambda}$ horses. That on said 6th of September, 1889, plaintiff and said Wyness executed to defendants said three notes, and plaintiff at the same time executed to W. W. Bynum, trustee, said deed of trust to secure the payment of said notes; and defendants executed to plaintiff a bill of sale for said T brand of horses, according to agreement. That on February 24, 1890, before any of said notes were due, plaintiff caused to be tendered to defendants the sum of $1767.67, the principal and interest on same, and offered to take them up, and that defendants refused to accept it. That again, on March 1, 1890, plaintiff called on defendants to pay off the notes, and defendant Smith informed him that said notes and deed of trust had been transferred to E. T. Bayse. That on March 3, 1890, Bayse endorsed said notes and deed of trust to B. H. Plemons, and on the same day plaintiff paid them off to said Plemons. That on December 7, 1889, defendants transferred the title and possession of said one-third interest in said $\overline{\Lambda}$ brand of horses to said Bayse. That from February 24, 1890, to March 3, 1890, plaintiff was ready and willing to pay said sum of $1767.67, in full satisfaction of said notes. Plaintiff alleged compliance on his part with the contract and refusal on defendants' part to transfer to him the title and possession of said third-interest in the $\overline{\Lambda}$ brand of horses, by reason of which he was damaged $1400, the market value of such interest.

Defendants answered by general denial, and also specially alleged a purchase by defendants August 28, 1889, of James Wyness, of the interest in each brand of said horses alleged by plaintiff as belonging to defendants, the consideration being a credit of $600 on an indebtedness of said Wyness to defendants, which left him still owing them about $625. That before this, on August 5, 1889, defendants, as a protection to themselves, bought Wyness' interest in said horses at a trustee's sale, for $325, which sum so paid they held as an additional charge against Wyness.

That on September 6, 1889, defendants agreed with plaintiff if he would secure the entire indebtedness of Wyness to defendants, they would regard the sale of Wyness to them as security for the $600; and if plaintiff had to pay the debt, that defendants would deliver over to him the said security. That Wyness was the principal and plaintiff only security on the notes described by plaintiff, and which were given for the indebtedness of said Wyness to defendants. That on December 7, 1889, E. T. Bayse bought all of plaintiff's interest in the $\overline{A}$ brand of horses at execution sale, and defendants then sold to Bayse said three notes held by them against Wyness and plaintiff, taking Bayse's individual note for the same. That at this time defendant Smith, who was acting for defendants' firm, had forgotten his agreement with plaintiff. That plaintiff knew of the trade between defendants and Bayse for a long time prior to its final consummation, and made no objection to same. That plaintiff was present on March 3, 1890, when Bayse paid off his notes to defendants and took from them the said notes against Wyness and plaintiff, and made no objection to defendants' action. That by objecting he could have protected himself from damage, and that he is now estopped from claiming any damage against defendants. They also specially denied that plaintiff had in good faith paid off the notes.

The judgment was for plaintiff for $1025 damages.

*Browning & Madden* and *Thomas F. Turner*, for appellants.—1. If a plaintiff brings his suit prematurely, he can not afterwards voluntarily manufacture facts sufficient to make a case against the defendant, and then by amendment to his pleadings, proceed with the case as if it had been properly brought at the start. Sydnor v. Totham, 6 Texas, 196; Cox v. Reinhardt, 41 Texas, 591; Estill v. Weaver, 19 Texas, 543; Ins. Co. v. Busby, 3 Willson's C. C., sec. 103.

2. The court erred in giving the following paragraph of his charge to the jury, to-wit: " You are instructed, that a bill of sale, although absolute on its face, if intended to operate as a mortgage or other security for debt at the time of its execution, will be held a mortgage only, and upon payment of the indebtedness it is intended to secure payment of, it ceases to have life and force. You are instructed, that choses in action are not subject to execution, and that no title thereto can pass by execution sale, and that an unsatisfied mortgage upon personal property is a chose in action." Because the said charge was not authorized by the pleadings or the evidence of either party, and was therefore calculated to and did confuse and mislead the jury, to the prejudice of defendants. Early v. Thomas, 14 Texas, 583; Lee v. Yandell, 69 Texas, 34; Dodd v. Arnold, 28 Texas, 97; Jones v. Brazile, 1 W. & W. C. C., 297.

3. A tender of money before it is due is of no avail, as the creditor is not bound to receive it before it is due according to the terms of the

contract. Estill v. Weaver, 19 Texas, 543; Ins. Co. v. Busby, 3 Will-son's C. C., sec. 103.

*L. G. Wilson, W. B. Plemons*, and *West & McGown*, for appellee.—A plaintiff may, by amending his petition, set up that an inchoate right existing at the commencement of the suit has since been perfected, and proceed with the case as if the inchoate right had been perfected when suit was filed. Kinney v. Lee, 10 Texas, 155; Craft v. Raines, 10 Texas, 520; Smith v. McGauhey, 13 Texas, 464; Peck v. McKeeler, 33 Texas, 239.

HEAD, ASSOCIATE JUSTICE.—If plaintiff's cause of action had not accrued at the time his original petition was filed, the defect was cured by filing the amendment more than a year thereafter. Culbertson v. Cabeen, 29 Texas, 254; Cox v. Reinhardt, 41 Texas, 594. No complaint is made of the failure of the court to tax the costs accrued prior to the filing of this amendment against the plaintiff. Dalton v. Rainey, 75 Texas, 516.

That part of the ninth paragraph of the charge which instructs the jury, "that choses in action are not subject to execution, and that no title thereto can pass by execution sale, and that an unsatisfied mortgage upon personal property is a chose in action," should not have been given. The jury probably understood this as meaning, that the execution sale under the judgment in case of Brown v. True and Wyness passed nothing to Bayse, who was the purchaser thereat of True's interest in the $\overline{A}$ stock of horses. If the bill of sale from True to Scott & McReynolds was intended to have effect only as a mortgage, the mortgagor's interest would still be subject to sale under execution in a proper manner. Rev. Stats., art. 2296; Jackson v. Harby, 65 Texas, 710. There is evidence in the record, however, from which it would seem to have been agreed between the parties that this execution sale should be treated as a nullity, and Bayse as having acquired no interest thereunder. But this was not submitted in the charge, and the evidence as to a binding agreement of this kind having been made is not so clear that we would be authorized to treat the error above indicated as immaterial.

We think the court erred in the third paragraph of the charge given the jury, in holding defendants liable if plaintiff tendered payment of the notes before they became due, for two reasons. In the first place, the tender to which this charge refers was one claimed to have been made to the defendants after it is conceded they had parted with the notes to Bayse, and were therefore no longer entitled to receive the money tendered. Plaintiff only claimed to be entitled to defendants' one-third interest in the horses when the notes were paid. There was nothing in the transaction to prevent defendants from transferring the *notes*, and after such transfer, if plaintiff claimed the right to pay them before maturity, he

should have made the tender to the then owner, not to the original payee. In the second place, the notes were made to mature at fixed dates, not on or before such dates, and bore interest from date until paid. The owner of such notes has the right to decline to receive payment thereof before the time fixed for their maturity. 2 Daw. on Neg. Inst., 4 ed., sec. 1233.

There was no evidence upon which to base the supposed case submitted in the charge, of plaintiff having been divested of his title to the horses by execution sale or voluntary transfer, prior to his signing the notes to defendants. The notes were executed September 6, 1889; the bill of sale to Scott & McReynolds was made October 9, 1889; the execution sale under which Bayse purchased occurred December 7, 1889. This was, however, submitting a ground of *defense* without evidence to support it; and as the defendants failed, notwithstanding this charge, they would not be entitled to a reversal on account thereof, as plaintiff might have been had the result been different.

Before plaintiff should be held to be estopped by his failure to object to defendants transferring the notes and horses to Bayse, it must at least appear that he not only had knowledge that such transfer was being made, but also knew that defendants were acting under the belief that he consented thereto, or had inadvertently forgotten their agreement with him, and at the time were acting in ignorance thereof. The special charge upon this issue, as asked, was correctly refused.

The court erred in refusing to charge the jury, at the request of the defendants, that if plaintiff was only surety for Wyness, and if the contract was that he was to have defendants' interest in the horses in case he had to pay the notes, he could not recover upon proof of a voluntary payment made by him before maturity. Plaintiff's contention was, that to induce him to secure the notes of Wyness, defendants agreed to convey to him their one-third interest in the horses whenever the notes should be paid, no matter by whom. If the jury should find this to have been the contract, it would, of course, only be necessary for plaintiff to show that he had in fact paid the notes to the owner thereof. Whether the payment was voluntary, or made before or after maturity, would be a matter of no importance to defendants. If the owner of the notes saw proper to receive payment before the money became due, he had a right to do so.

The defendants, however, contended, that they were only to convey their interest in the horses to plaintiff if he had to pay the notes himself. If the jury should find this to have been the contract, it is clear it was to defendants' interest to have the notes paid by Wyness, instead of plaintiff, for in that case they would have both the money and the horses; while if plaintiff paid, they would lose the horses. Under such circumstances, plaintiff would not have the right to volunteer payment before maturity. It might be that defendants would prefer to keep the horses

and not call on plaintiff for payment at all; and if the contract was as they claim it to have been, what was in the way of their doing this? If it be replied, that defendants had already placed it out of their power to comply with their contract, by conveying the horses to Bayse at the time they transferred him the notes, the answer is, this made it so much the more to their interest to have the notes paid by Wyness, because, if plaintiff was compelled to pay, this would require them to account to him for the value of the horses, which would consume the greater part of the amount they would receive on the notes.

We conclude, if the contract was as defendants allege it to have been, plaintiff does not make a case by showing a voluntary payment of the notes by him as surety, before their maturity, without the consent of the defendants.

The other errors assigned need not be considered.

The judgment of the court below will be reversed, and the cause remanded for a new trial in accordance herewith.

*Reversed and remanded.*

Delivered November 29, 1893.