## AMERICAN SURETY CO. OF NEW YORK et al. v. ALAMO IRON WORKS et al.

### No. 1969.

Court of Civil Appeals of Texas. Beaumont.
May 28, 1930.

Rehearing Denied June 4, 1930.

A. D. Dyess, of Houston, for appellants.

J. Llewellyn, of Liberty, Baker, Botts, Parker & Garwood, Andrews, Streetman, Logue & Mobley, Fouts, Amerman, Patterson & Moore, Platt, West & Stevenson, York & Neeld, Harry W. Freeman, H. L. Nicholson, Stewart & DeLange, and Campbell, Myer, Campbell & Foster, all of Houston, A. Ludlow Calhoun, D. C. Marcus, and D. E. O'Fiel, all of Beaumont, and Heidingsfelder & Kahn, Wolters, Blanchard, Woodul & Pressler, and Fogle, Eastham & Eastham, all of Houston, for appellees.

WALKER, J.

On the 27th day of July, A. D., 1927, Charles Dahl entered into a written contract with Dayton Independent School District to alter and repair certain of its school buildings, and to build for it new certain school buildings. The price named in the contract for this work was $86,415.44. The contract provided for the execution of a bond to secure its faithful performance. On even date with the date of the contract Dahl executed the bond, as provided therein, payable to the Dayton Independent School District in the sum of $43,207.72, with American Surety Company of New York as surety, conditioned as required by article 5160, R. S. 1925. In due time Dahl entered upon the performance of his contract but, because of financial difficulties, being unable to complete it within the time limit and according to specifications, on the 29th day of December, 1927, joined with the American Surety Company, his surety, in writing to the district the following letter:

"American Surety Co., of New York

"Houston, Texas, December 29th, 1927.

"Mr. J. T. Tadlock, Chairman, Board of Education, Dayton, Texas.

"Re: Chas. Dahl Contract.

"Dear Sir: Mr. Finger has asked that we write you concerning the payment of the payrolls on the school job. It will be satisfactory to us as Contractor and surety for you to issue vouchers for the payroll due last Saturday, December 23rd, and for that due this Saturday, December 30th, said payments to be supervised by you to ascertain that the money goes to the laborers so that there will be no possibility of these labor claims not being satisfied. The same arrangement may be carried out each week until further notice.

"Under this arrangement Mr. Dahl agrees to keep all equipment and material necessary on the job and to complete his part of the contract as rapidly as possible.

"Yours very truly,

"[Signed]   C. Dahl.

"C. Dahl, Contractor.

"American Surety Co. of N. Y.

"By A. W. Penn,

"A. W. Penn, Inspector."

On the date of this letter the district had in its treasury a balance of the contract price amounting to $19,431.95. The proposition submitted by this letter was accepted by the district and under the direction of Professor A. W. Runyan, superintendent of the public schools of the district, the work under the contract was carried forward to completion at an additonal cost from the time Professor Runyan took charge of $10,703.55, leaving in the treasury of the district $8,728.30 of the original contract price. The work was completed under the general supervision of Dahl's foreman and with the crew of hands he had assembled for this purpose. As superintendent on the job, Professor Runyan used all material left upon the job by Dahl while he was superintending the work; also, in completing the work, the tools, machinery, and appliances of Dahl were used as when he was in direct charge. Professor Runyan bought material necessary to prosecute the work to completion and paid the labor bills from the funds in the hands of the district. At the time Professor Runyan took charge, Mr. Dahl had withdrawn his men from the work. Before Professor Runyan took charge, Dahl's superintendent, the architect, Professor Runyan, and a representative of the surety company had a conference for the purpose of deciding how the work should be finished. Professor Runyan represented the district was in need of the buildings and the surety company representative told him to proceed with the completion of the work; that the surety company would have to finish it, but that it did not have any organization; that is, was not in the building business and, therefore, did not have the necessary organization to do the work. The surety company asked Professor Runyan, as representing the district, to proceed with the work and with Mr. Dahl's force, and to complete the job. In this connection a representative of the surety company told Professor Runyan to prosecute the work to completion, and, if it cost more money than the district had in the treasury, the surety company would be responsible for the difference. At no time during the negotiations for the completion of this work did the surety company in any way deny liability upon the bond but, admitting its liability, counseled with the interested parties for the completion of the work in order that the interests of all parties might be duly protected. Under the supervision of Professor Runyan, all work contemplated by the contract was completed

about April, 1928; and accepted by the architect as being in satisfaction of the contract, and delivered to and accepted by the district as being in accordance with its contract. The district has never suggested in any way that the work contemplated by the contract was not duly executed. When the building was completed and delivered to the district, the following materialmen and subcontractors had claims against Dahl for the amount herein shown; this statement also reflects the necessary data regarding these claims. The statement is as follows:

| Name | Nature of Agreement and date thereof | Amount Furnished before Sep. 5, 1927 | Amount Furnished after Sep. 5, 1927 |
|---|---|---|---|
| Alamo Iron Works | Written Contract, Aug. 29, 1927. | $1,937.17 | $1,605.71 |
| South Texas Lumber Company | Contract, Aug. 1927 | 5,665.60 | 2,624.97 |
| J. A. Nolsch | Open Account | 359.78 | 201.23 |
| W. L. Macatee & Sons | Open Account | 232.50 | 295.36 |
| Mabry Mfg. & Lumber Co. | Written Contract of August 3, 1927 | None | 4,226.79 |
| J. H. Herman Co. | Written Contract Sep. 1, 1927—See Ev. pp. 46–7 | | |
| Beaumont Building Material | Written Contract | None | 2,100.00 |
| Cole Brick Co. | Open Account | None | 566.90 |
| Natural Slate Blackboard Co. | Oral Contract, Aug. 28, 1927 $702.16 Open Account 227.07 | None | 929.23 |
| Pittsburgh Plate Glass Co. | Open Account | None | 155.33 |
| A. C. Horn Co. of Texas | Open Account | None | 218.51 |
| R. B. Everett Co. | Open Account | None | 80.00 |
| Peden Iron & Steel Co. | Open Account | None | 1,178.86 |
| Holtkamp Sheet Metal Works | Open Account | None | 175.00 |
| L. Seline | Verbal Contract Aug. 1927 —Job completed Latter part of Sep. or first of Oct. | None | 97.00 |
| Reliance Brick Co. | Open Account | None | 74.40 |
| Bickley Bros. | Open Account | None | 118.46 |
| Houston Art Stone Co. | Open Account | None | 91.00 |

Being unable to pay these accounts Dahl was adjudged a bankrupt. Thereupon, the claimants made demand of the surety company to make payment in accordance with the terms of its bond. Payment being refused, Alamo Iron Works, as plaintiff, instituted suit in the district court of Harris county for the amount of its claim, naming as defendants American Surety Company, Charles Dahl and his trustee in bankruptcy, the Dayton Independent School District, and those holding unpaid claims under this contract. Plaintiff plead that American Surety Company was a corporation; the due execution by it upon a valuable consideration of the bond executed by it as surety for Dahl; that the same was voluntarily executed by it as surety; and that by reason of thus executing the bond as surety it was liable to plaintiff for the amount of its claim, as per the terms of the bond. A verbatim copy of the bond was attached as an exhibit to plaintiff's petition, showing that it was executed in the following manner:

"Chas. Dahl, Principal.
"American Surety Company of New York,
"By M. P. Ivey,
"Surety Agent and Attorney in Fact.
"[Seal]"

On August 16th, 23d, and 30th of 1928, Alamo Iron Works, joined by defendant Dayton Independent School District, published notice of the filing of this suit in The Daytonite, a weekly newspaper published at Dayton, Liberty county, Tex., "requiring all parties that have any interest in the subject matter of this suit or in any claim, right, title or interest growing out of the construction and/or repair of said school buildings or any of them, against said principal, Chas. Dahl, or his estate, or against the said surety, American Surety Company of New York, or against said Dayton Independent School District of Texas, or against any other party to this suit, to take notice of the filing of said suit and to intervene therein for assertion of any cause of action claimed by any party." Afterwards all claimants, as named above, appeared and answered and also filed their interventions, duly pleading the respective amounts of their claims. On the 23d day of March, 1929, under leave of the court, Alamo Iron Works filed

its second amended original petition herein pleading in more substantial detail its cause of action. The American Surety Company answered only by general and special demurrers and general denial. Neither the original answer of Dayton Independent School District, nor any amended answer is in the transcript. However, the transcript contains its trial amendment filed on the 23d day of March, 1929, under permission of the court, supplementing its pleadings already on file. By this plea it was alleged that its contract with Dahl had been executed and that it had in its treasury a balance of the contract price of $8,728.38. Against this fund it asserted the following claim: First, for compensation to Professor Runyan for supervising the completion of the work, three months at $200 per month; second, attorneys' fees for filing an answer and presenting its defenses against the claims of the plaintiff and interveners, $1,000; third, liquidated damages for 122 days at $20 per day. This plea was stricken on motion of American Surety Company on the ground that the allegations constituted a surprise and that it was not prepared to meet the issues raised by the plea. Upon trial to the court without a jury, judgment was entered in favor of the original plaintiff and the intervenors against the American Surety Company and Charles Dahl for the respective amounts due on their claims, and in favor of Dayton Independent School District for its attorneys' fees in the sum of $750, with a further order in favor of the original plaintiff and interveners that the balance of the contract price in the hands of the district, less the amount awarded it as attorneys' fees, be paid pro rata to the plaintiff and interveners. The judgment also adjusted the equities between the American Surety Company and the claimants as to this unpaid balance. No separate conclusions of fact and law were filed or requested. The district and the American Surety Company duly prosecuted their appeals from this judgment to the Galveston Court of Civil Appeals. Under orders of the Supreme Court the case was duly transferred to the docket of this court.

We will first consider the assignments of Dayton Independent School District, which are as follows: First. That the court erred in striking its trial amendment. This contention is overruled. The original answer of the district not being in the transcript, we must presume that the issues raised by the trial amendment were presented for the first time on the 23d day of March, 1929, after the case had proceeded to trial on the 21st day of March. On this showing the trial court properly sustained the motion of the American Surety Company to strike the plea on the ground of surprise. Second. This appellant contends that the trial court erred in refusing to allow compensation to Professor Runyan for his services in supervising the completion of the work. The statement brought forward by appellant in its brief under this proposition raised the issue that Professor Runyan was entitled to compensation for this service but, there being no plea in the record upon which this claim could be based, ho error was committed in denying the district a recovery for this item. Third. For the same reason no error was committed in refusing the district recovery on its claim for liquidated damages. Fourth. Appellants' main contention seems to be that the court erred in allowing any recovery against it for the unpaid balance of the contract price in its treasury. This ruling was not error because there is no pleading in the record raising this issue, and we would say it affirmatively appears that no claim for this item was in fact made. The district could have been allowed recovery of its attorneys' fees only on the theory that it was a stakeholder. Had it appeared as a litigant asserting a claim to this fund, this fee could not have been allowed. Fifth. On the undisputed facts appellant asserts that Dahl abandoned his contract, and thereby forfeited all claim to this fund. On these facts it asserts that there was no contractual liability between appellant and the surety company and the claimants to sustain the judgment in their favor for a pro rata distribution of the unpaid portion of the contract price. Without entering into a discussion of the principles of law invoked by this proposition, it is sufficient to say that the issue was clearly raised, under the statement we have made above, that Dahl did not in fact abandon his contract. On oral argument appellant stated if that issue was raised then these propositions are without merit.

We now come to the issues raised by appellant American Surety Company of New York. In discussing its assignments this appellant will be referred to simply as surety company or appellant. It contends that the suit was prematurely filed by Alamo Iron Works. The proposition is that since the suit was instituted within the six months' period prescribed by article 5161, R. S. 1925, and since plaintiff did not allege that a final settlement had been had between Dahl and the school district, it affirmatively appeared upon the face of the record that plaintiff had no cause of action. This is not a correct construction of articles 5161 and 5162. The proposition, under our decisions, is not one of accrual of cause of action but that suit was prematurely filed. Edwards Mfg. Co. v. Surety Co. (Tex. Civ. App.) 283 S. W. 624. The issue raised by this proposition is a matter of defense available only under a plea in abatement. Not having filed this plea, appellant cannot say that the suit was prematurely filed. Fennell v. Trinity Port-

land Cement Co. (Tex. Civ. App.) 209 S. W. 796, 798. This case is directly in point on its facts. It was there said: "If a suit of this character is prematurely brought, that is a matter of defense which should be raised by plea in abatement. There is no such plea in this record."

As a further answer to this proposition it appears affirmatively on the face of the record that the contract had been completed and that the district had no claim whatever against Dahl or his surety, and that it had in its hands the sum of $8,728.30 as the balance of the contract price. On these facts, long after the institution of this suit and more than six months after the completed work had been delivered to the district, plaintiff filed an amended pleading on, to wit, the 23d day of March, 1929. The filing of this amended petition took out of the case the issue that it was prematurely filed. Burns v. True, 5 Tex. Civ. App. 74, 24 S. W. 338; Morgan v. Bement, etc., 24 Tex. Civ. App. 564, 59 S. W. 907; Queen Ins. Co. v. May (Tex. Civ. App.) 35 S. W. 829; Bryan, etc., v. Kropp (Tex. Civ. App.) 197 S. W. 733.

█ Appellant also asserts that appellees failed to sustain the issue that the bond sued upon had been duly executed by it as surety. Alamo Iron Works as plaintiff, pleaded, as stated above, the due execution of the bond by appellant. While there was no allegation that the bond was executed for appellant by its attorney, M. P. Ivey, it was alleged that the bond was duly executed, and by proper allegations a copy of the bond, showing the manner of its execution, was made a part of the petition. This exhibit, on these allegations, could be looked to in aid of the allegations of due execution. On this pleading by plaintiff and interveners the introduction of the bond made out a prima facie case of its due execution and delivery which appellant could not controvert because it had failed to plead non est factum. Appellant would meet this proposition by saying that it is not urging non est factum as an affirmative defense, but contends simply that plaintiff and interveners themselves made out a case showing affirmatively that it did not authorize the execution and delivery of the bond. As the facts do not sustain this proposition, we do not determine its soundness as an abstract proposition of law. The facts are as follows: Intervener Mabry Manufacturing Company offered in evidence a power of attorney executed by appellant in the city of New York on the 13th day of May, 1927, making, constituting, and appointing Milton P. Ivey and Walter W. Schoelman of Houston, Harris county Tex., and each of them, "its true and sufficient and lawful attorney for it, and in its name and behalf" to execute bonds of the character of this bond. The power of attorney further stipulated "such bonds and

undertakings to be countersigned in every instance by A. D. Dyess." This bond was not countersigned by Dyess. Plaintiff and the other interveners did not object to the introduction of the power of attorney. Because the bond was not thus countersigned appellant makes the contention that the mere introduction of the power of attorney established, as a matter of law, that the bond was not lawfully executed and delivered; and because the plaintiff and the other interveners did not object to its introduction, the further contention is made that it was introduced and received against all of the appellees. If the power of attorney raised an issue, which point we do not decide, it was only between appellant and Mabry Manufacturing Company. Not having any support in the pleadings, it was not necessary that plaintiff and the other interveners object to its introduction or even ask the trial court not to consider it against them, for evidence admitted without a supporting pleading cannot form the basis of a judgment. Thomason v. Berry (Tex. Com. App.) 276 S. W. 185. But as we said above, the facts do not sustain the proposition even between appellant and Mabry Manufacturing Company. There was no conclusive showing that this bond was in fact executed by Ivey under authority of this power of attorney. That appellant received a consideration for the execution of the bond, recognized its liability thereon, and participated in conferences looking to the completion of the work, and advised and instructed the district to prosecute the work to completion, and agreed to pay all unpaid bills not covered by the balance of the contract price remaining in the treasury of the district, were potent circumstances to be considered by the court on the issue that the bond was duly executed, even if between appellant and Mabry Manufacturing Company the mere introduction of the power of attorney destroyed the prima facie case made under the pleadings. Of course, appellant correctly says that the circumstances just enumerated were not available to appellees as constituting waiver, ratification, or estoppel, since these issues were not pleaded. But they did constitute primary proof of the execution and delivery of the bond, and, so far as the record shows, were considered by the trial court for no other purpose.

█ Against plaintiff and each and all of the interveners, appellant advances propositions attacking the judgment in their favor on the ground that they failed to comply with the provisions of article 5160, Revised Statutes 1925, as amended by the First Called Session of the Fortieth Legislature (1927) c. 39, § 1 (Vernon's Ann. Civ. St. art. 5160 note). This amendment was as follows: " 'or persons' after 'any person' in the first

line and adding 'Provided further, that no person or persons, firm or corporation shall be secured in the payment of any claim contracted prior to the execution of the contract that said bond is given to secure, and provided further that all claims for labor shall be itemized and sworn to by the owner or his authorized agent and filed with the contractor or with the county clerk of the county in which said work is being prosecuted within thirty days from the date that said claim accrued and became payable, and all claims for material shall be itemized and sworn to by the owner or his authorized agent and filed with the contractor or with the county clerk of the county in which said work is being prosecuted within thirty days from the date of the delivery of said material; and any claim filed after said thirty days shall not be secured by said bond.'"

We do not copy this article prior to its amendment because appellant, on oral argument, conceded that appellees complied strictly with all of its conditions. It is also conceded by all parties that none of the interveners attempted to comply with the provisions of this amendment. The amendment became effective September 5, 1927. Appellant admitted that all material furnished prior to the effective date of the amendment was within the terms of the bond. These assignments attack the judgment only in so far as it allowed recovery for material furnished after the amendment became effective. Appellant insists that this amendment was retroactive in its effect and remedial in its nature. We believe both of these propositions are unsound. By its terms the amendment did not purport to regulate the rights of the parties to contracts made prior to its effective date. To give it that construction might probably work a great hardship upon parties whose rights it purported to regulate. Under this construction, what would be the effect of the amendment upon a claim for material furnished twenty-nine days prior to September 5, 1927? Twenty days prior to that date? Ten days prior to that date? One day prior to that date? Thirty-five days subsequent to that date? Unless that intent clearly appears, an act of the Legislature should not be given a retroactive effect. It was said in City of Fort Worth v. Morrow (Tex. Civ. App.) 284 S. W. 275, 277: "It is always presumed that statutes are intended to operate prospectively, and all doubts are resolved in favor of such construction."

In Rockwall County v. Kaufman County, 69 Tex. 172, 6 S. W. 431, it was said: "In the absence of any special indication or reason, and as a common rule, a statute will not be applied retrospectively."

In Cox v. Robison, 105 Tex. 426, 150 S. W. 1149, 1156, Judge Phillips said: "We recognize the rule that in general Constitutions and statutes operate prospectively."

There being a presumption that the amendment was prospective in its operation, we do not find the slightest circumstance to impel a retroactive construction. Therefore, as both the contract, and the bond were executed prior to the effective date of the amendment and as all the rights in litigation in this case accrued under the contract and bond, the amendment goes out of the case.

But the amendment was not remedial. It was an attempt to regulate the substantive rights of all parties coming within its provisions. The distinction between remedial statutes and statutes dealing with substantive rights is well illustrated by the following authorities: In Thomas v. Western Union Telegraph Co., 25 Tex. Civ. App. 398, 61 S. W. 501, 502, it was said: "By 'remedy' in this connection is meant such matters as the character and form of action, the admissibility of evidence, the mode of redress, limitations, execution of judgments, and the like. The right acquired, and the obligations created, and all matters pertaining to the essence of the contract, are determined by the lex loci contractus. The damages to be allowed, if fixed or limited by such law, pertain to the right, and not to the remedy. This affects both the cause of action and the liability of defendants."

Chicago, Rock Island & Pacific Ry. Co. v. Thompson, 100 Tex. 185, 97 S. W. 459, 7 L. R. A. (N. S.) 191, 123 Am. St. Rep. 798, by the Supreme Court, was an action for personal injuries by Thompson, an employee, against the railway company. The contract of employment was entered into in Indian Territory and provided that, unless the servant should give notice of any claim for injuries within thirty days, he should be barred of any suit on account of injuries received by him in the course of his employment. Construing this contract, our Supreme Court held that it was valid under the laws of the Indian Territory and was not regulated or controlled in any way by article 3379 of the Revised Statutes of Texas of 1895, which provided: "No stipulation in any contract requiring notice to be given of any claim for damages as a condition precedent to the right to sue thereon shall ever be valid unless such stipulation is reasonable, and any such stipulation fixing the time within which such notice shall be given at a less period than ninety days shall be void, and when any such notice is required, the same may be given to the nearest or any other convenient local agent of the company requiring the same. In any suit brought under this and the preceding article it shall be presumed that notice has been given, unless the want of notice is specially pleaded under oath."

In reaching this conclusion the Supreme Court said: "The stipulation was regarded by the Court of Civil Appeals as affecting only the remedy, in analogy to the statute of limitations, and as being controlled by the law of the forum. The evident purpose of the stipulation was to secure notice to the employer of the claim of the servant that it was liable for an injury suffered by him in order that opportunity might be given for prompt investigation and ascertainment of the facts affecting the claim. Phillips v. W. U. Tel. Co., 95 Tex. 643, 69 S. W. 63. It fixes no time within which suit must be brought after notice has been given, leaving the plaintiff free to sue within the time allowed by law. But it attaches to the failure to give the notice the effect of 'a bar to the institution of any suit on account of such injuries.' The bar is not to arise from lapse of time, merely, but from the failure to do that which the parties agreed on as essential to the right to have a determination by suit of the question of liability for the injury. Its effect, if enforced according to its terms, was either to prevent the accrual of liability, or to put an end to all further question of liability after the expiration of the prescribed time without notice. Whether it had the effect first mentioned, as contended by plaintiffs in error, or the latter, as contended by defendant in error, is wholly immaterial to the present inquiry. In either view it acts upon the substantive rights of the parties, and not upon the mere mode and time of their enforcement in the courts."

■ This argument of the Supreme Court is directly in point upon the facts of this case. The amendment we are discussing fixed no time within which a claimant, for material furnished a contractor, must bring suit after notice was given. It left the claimant free to sue within the time allowed by law, but it attached to the failure to give the notice required by the amendment the effect of denying the claimant protection under the bond. Without a further review of the authorities of this state, we think the case just cited is absolutely conclusive that this amendment was not remedial, but dealt with substantive rights. Thus construing this amendment as constituting a regulation of the substantive rights of the parties within its provisions, the Federal Constitution denies it a retroactive effect.

■ The surety company has a further proposition that the bond sued upon required it to answer for the debt, default, and miscarriage of Dayton Independent School District and was, therefore, void as being in contravention of the statute of frauds. There is no merit in this contention. The bond was in writing and, even on the construction of appellant, its execution was authorized under the provisions of article 5160.

In discussing the amendment to article 5160 of 1927, it should be said that this amendment was in effect only a short while. This article was further amended by the Forty-First Legislature in 1929 (c. 226 [Vernon's Ann. Civ. St. art. 5160]).

It is our conclusion that the judgment should be affirmed, and it is accordingly so ordered.