## DETROIT FIDELITY & SURETY CO. v. MOBERLY et al.

No. 2673.

Court of Civil Appeals of Texas. El Paso.

June 16, 1932.

Rehearing Denied July 18, 1932.

Albert B. Hall, of Dallas, for appellant.

James V. Allred, Atty. Gen., and T. S. Christopher, Asst. Atty. Gen., Bishop & Holland, Wynne & Wynne, and Toddie L. Wynne, all of Athens, Bell & Clark, W. B. Harrell, Tom E. Moberly, Howard G. Steere, and J. Harold Goode, all of Dallas, Tirey & Tirey, of Waco, and Justice & Sigler, of Athens, for appellees.

PELPHREY, C. J.

On the 27th day of December, 1928, a contract was entered into between the state of Texas, represented by the state highway engineer, and E. Eproson & Co., a firm composed of G. A. Eproson, Ernest Eproson, and R. B. Truett, for the improvement of road bridge No. 19, job No. 108–D., in Henderson county, Tex., according to plans, specifications, proposal, and notice to contractors.

The proposal of the contractors was to do the amount of work itemized in the proposal for $55,527.82, and the contractors executed a bond for that amount with appellant as surety, conditioned that the contractors "shall in all things well and truly perform all the terms and conditions of the foregoing contract, to be by them (him) performed, and within the time therein mentioned, and shall pay all lawful claims for labor performed and material furnished in and about the construction of said road bridge and shall have paid and discharged all liabilities for injuries which have been incurred in and about

299

the said construction, under the operation of the statutes of the State, * * *"

The work was abandoned by the contractors on or about October 22, 1929, and.on February 5, 1930, the state employed the firm of Brown & Abbott to complete the work.

On January 30, 1930, Mrs. E. L. Moberly, a feme sole, filed this suit against G. A. Eproson, Ernest Eproson, and appellant; Truett, being deceased, and his estate insolvent, it was not made a party.

She sought to recover $240 for hire on some teams she had rented to Eproson & Co., and the further sum of $1,010.50 as damages arising from the death of certain mules and the loss of certain property rented to them, which she alleged was brought about by their lack of diligence in the preserving and care of her property. She prayed for attorney's fees and for a lien upon any funds due or to become due to the contractors.

G. A. Eproson answered on behalf of himself, Ernest Eproson, and Eproson & Co., admitting the abandonment of the contract; the making of the bond with appellant as surety; the making of the contract with Mrs. Moberly, and the receipt thereunder of the mules and equipment; the death of the mules and loss of equipment by reason of their lack of care; and that they had not paid her for the hire of the teams and equipment.

Later a number of furnishers of labor and material intervened, each seeking recovery on account of that which he furnished. The state of Texas also intervened, seeking recovery of a loss alleged to have been caused by the default of the contractors and priority as to payment.

Appellant answered by general demurrer, exceptions, and by pleas, asserted that no cause of action was stated as against it because it was shown that, at the time plaintiff's suit was filed, the contract had not been completely performed, and that final settlement on account thereof within contemplation of the statute authorizing suit on the bond had not been had; that it had been released by changes made in the contract, plans, and work without its consent; and that the state had not completed the work as cheaply as possible, but had arbitrarily spent more than the fair and reasonable cost of completing the work.

The cause was tried before the court, and a judgment was rendered against the principals and the surety on the bond; the state of Texas being given priority thereunder.

Mrs. Moberly and several of the interveners were denied recovery, either in whole or in part, as against the surety. Appellant duly perfected its appeal, and the Texas Sand & Gravel Company also excepted and gave notice of appeal.

Mrs. Moberly excepted to the judgment, but did not perfect her appeal.

The questions presented for our determination are those presented by appellant and by the cross-assignments of the Texas Sand & Gravel Company.

## Opinion.

The first proposition presented by appellant reads: "Because the statute authorizing furnishers to institute suit on a bond covering a contract for public work provides that 'it shall not be commenced until after complete performance of said contract and final settlement thereof,' and plaintiff declared on such bond, alleging that the contractors had abandoned the contract, but not alleging and proving that the contract had been performed and settled, no cause of action was stated against the surety and the court erred in holding to the contrary and in rendering judgment against it on account of the bond."

■ The statute in question, being one creating a right and prescribing a time within which the right might be asserted, is one of limitation. Edwards Mfg. Co. v. Southern Surety Co. (Tex. Civ. App.) 283 S.W. 624.

■ The objection urged here being that the cause of action on the bond had not arisen at the time the suit was commenced, not having been presented by plea in abatement in due order of pleading, was waived. Edwards Mfg. Co. v. Southern Surety Co., supra; Love v. Austin Bridge Company (Tex. Civ. App.) 5 S.W.(2d) 570; American Surety Company v. Alamo Iron Works (Tex. Civ. App.) 29 S.W. (2d) 493. Appellant's assignments raising this question are accordingly overruled.

By its second and third propositions appellant seeks a reversal of the judgment here, asserting that the undisputed evidence, or at least the overwhelming preponderance of the evidence, shows that the state of Texas did not complete the contract as cheaply as possible, and that, in the exercise of due diligence, it should have completed it at a cost not exceeding the unpaid balance of the contract price.

Under these propositions appellant argues that the work was abandoned October 22, 1929; that the original price was $55,527.82; that the quantities were increased to such an extent that the total cost was increased to $70,231.21; that, according to Mr. Hank, a witness for the state, the prices specified in the Eproson & Co. contract were adequate prices for the work covered by it; that, of the contract price, $28,054.02 was paid to Eproson & Co. on account of the work done by them before abandonment; that an additional $13,022.79 was retained by the state on account of the work done, making a total of $41,076.81, which represented the proportion of the work done before abandonment,

based on contract prices; that this amount, deducted from $70,231.21, left remaining $29,154.40, representing the proportion of the work, based on contract prices, remaining to be done after abandonment; that for this amount of work the state paid $60,305.-25; that, if the work had been completed during October, November, and December, 1929, it would have cost appreciably less than it did when actually done; that Matt Larkin, a responsible contractor, on December 6, 1929, being prepared to give a bond to guarantee the performance of his contract, offered to complete the unfinished part of the work at cost plus 15 per cent. thereof, not to exceed the Eproson & Co. contract prices, plus 45 per cent. of those prices, not to exceed in the aggregate $42,177.19, the balance of the contract price unpaid at the time of abandonment; that the state refused such offer, but agreed to contract with him on a more onerous basis, provided appellant would become a party to the contract; that appellant was willing to become a party to a contract between Larkin and the state based on his offer, but was unwilling to obligate itself by a more onerous one; and that two months later the state entered into a contract with Brown-Abbott & Co. under which it paid them $60,305.25 to do that which Larkin had offered to do for $42,273.88.

That the amount spent by the state for the completion of the contract was the fair and reasonable cost of the completion thereof, we find the following testimony in the record:

S. J. Treadway, the resident engineer for the state highway department in Henderson county, testified: "That he was acquainted with the reasonable and fair price for that character of work, down there in Henderson County, and was acquainted with the schedule of prices allowed Brown & Abbott for the completion of this job of Eproson & Company in Henderson County, and that those prices were fair and reasonable prices for the services performed; that he or his employees, under his supervision, prepared all estimates, and that they were correct; * * * that as to whether Eproson prices as bid on the original contract were sufficient, all he could say was that he did not seem to pay expenses; that that was all he knew about it; that he did not believe he would have wanted Eproson's contract; that when the bids came in he thought Eproson's prices were too low; that invariably the State let the contract to the lowest bidder, if he made a bond, regardless of how low his bid was."

Ed Abbott, a witness for appellant, testified: "That he had been in the contracting business since 1901, and had had some experience on highway projects; that he com-

pleted it under a cost plus basis for the Highway Department,—that is, cost plus 15%; that such was a reasonable contract for that work, and that the unit prices set forth in his agreement with the Highway Department were reasonable unit prices for that character of work."

■ We think the above-quoted testimony is sufficient to show that the work done in completing the contract was done at fair and reasonable prices, and therefore the propositions must be overruled in so far as they attack the prices paid to Brown & Abbott for completing the contract.

Appellant, however, contends that Matt Larkin offered to complete the work at cost plus 15 per cent., not to exceed in the aggregate $42,273.88, and that the state should have accepted such offer instead of paying Brown & Abbott more than $60,000 for the work.

Matt Larkin himself was a witness in the case, and, as to his offer, testified: "That he knew something about the project involved in Eproson & Company's contract in Henderson County, and had had occasion to go to the site of the work after it was abandoned by Eproson & Company; that he was there about a week after the abandonment; that he made an offer to complete the work for cost plus 15%, with a guarantee that the cost of the work so figured would not exceed the cost of the unfinished part of the work when figured on the unit prices in the Eproson contract, plus 45% of those prices; that his offer was made to R. G. Williams, Superintendent of Aid Projects of the State Highway Department; that it was made about December 6th or 8th, 1929; that he was prepared to give a bond to guarantee the performance of the proposed contract; that there was a stipulation in his offer that all work apparently finished but not in fact finished would be done on a cost plus 15% basis, and with that stipulation he considered his bid ample to cover the work; that he did not know how much of the work was apparently finished, or whether any of it was apparently finished and not in fact finished."

This testimony, we think, not only fails to bear out the above contention, but refutes the statement that Larkin offered to complete the contract for any stated amount.

At most he offered to limit the cost of the work apparently finished to an amount not to exceed the Eproson prices plus 45 per cent., but, by the above-quoted stipulation, took from his guaranty all work apparently but not in fact finished.

There is nothing in the record to show what amount of the work to be done would fall within the provisions of the stipulation, and therefore the offer did not apprise the state as to the amount it would be called upon to pay to complete the work under the offer as made, and consequently it cannot now be argued that the refusal of such offer establishes the fact that the state failed to complete the work as cheaply as possible.

Appellant's argument that it should not be held liable on its bond because of changes in the original contract, without its consent, and because the work was done in the spring of 1930 instead of the fall of 1929, is also, we think, untenable.

Without here attempting to quote the testimony, it shows that the delay in completing the work by the state was brought about, in main, by reason of negotiations with Matt Larkin, a contractor, who was requested by appellant to make the offer shown by his above-quoted testimony, and that the increased amount of work found necessary to be done in finishing the work was largely due to the fact that during such negotiations the part of the road which had been constructed, being of a "sugar sand" formation, was damaged by the action of the winds and rains thereon together with the increased hauling made necessary by the improper drainage provided by the original contractors.

■ In our opinion appellant cannot now be heard to complain of the increased cost which arose during the time the state was attempting to reach an agreement with the contractor offered by it and which partly arose by reason of faulty construction on the part of the parties for whom it was surety.

We think the evidence of the witness Treadway sufficient to support the conclusion that there were no changes made in the original plans which exceeded the 20 per cent. which the contract allowed.

Appellant further complains of the trial court's action in rendering judgments against it in favor of certain furnishers of material and labor, among which is the Sheffield Steel Corporation of Kansas City, Mo.

The corporation introduced in evidence five instruments, each consisting of invoice, invoice number, shipping point, shipping date, destination, and terms of payment. The first one described and itemized 3,617 pounds of reinforcing steel, shipped February 26, 1929, to Eproson & Co. at Athens, Tex., marked "F. A. P. 595, Henderson County," for which it charged $92.23; the second described and itemized 50,142 pounds of reinforcing steel, shipped March 11, 1929, to Eproson & Co., at Athens, Tex., marked "F. A. P. 560, Henderson County," amounting to $1,228.48; the third described and itemized 10,246 pounds of reinforcing steel, shipped April 26, 1929, to Eproson & Co., at Athens, Tex., marked "F. A. P. 560, Henderson County," amounting to $312.50; the fourth described and itemized 50,576 pounds of reinforcing steel shipped

April 26, 1929, to Eproson & Co., at Athens, Tex., marked "F. A. P. 560, Henderson County," amounting to $1,564.02; and the fifth described and itemized 66,905 pounds of reinforcing steel shipped May 11, 1929, to Eproson & Co., at Athens, Tex., marked "F. A. P. 50, Henderson County," amounting to $2,040.60.

Attached to each of the invoices was the following affidavit:

"Notice to County Clerk.

"Kansas City, Mo. .

"Henderson County, Athens, Texas.

"Eproson & Company, Dallas, Texas.

"State of Missouri, County of Jackson.

"On this day personally appeared H. R. Warren, Treasurer of Sheffield Steel Corporation, who being by me duly sworn, upon oath says that he has verified the sale and shipments covered by the attached invoice and that the list of materials and the prices itemized thereon are true and correct.

"[Signed] H. R. Warren,
"Authorized Agent of Sheffield Steel Corporation.

"Subscribed and sworn to before me this —— day of —— A. D. 1929.
"[Signed] Homer L. Rogers,
"Notary Public in and for Jackson · County, State of Missouri."

Appellant cites the following portion of article 5160: "All claims for material shall be itemized and sworn to by the owner or his authorized agent and filed with the contractor or with the county clerk of the county in which said work is being prosecuted within thirty days from the date of the delivery of said material"—and argues that the above-quoted affidavits are not sufficient, in that they fail to state there was any claim or that the amounts shown by the invoices were due and unpaid.

It will be seen from the quoted article that no particular form of affidavit was required, but merely that the claim be itemized, sworn to, and filed with either the contractor or the county clerk within thirty days after the material was delivered.

▆ It is admitted here that these claims were filed within the thirty days, and, in itemizing and swearing to the claims, the corporation seems to have done all that the law at that time required.

Appellant makes the further objection that, as to the $92.23 and $2,040.60, shown by the itemized invoices to have been furnished for federal aid projects 595 and 50, respectively, there can be no recovery against it because the numbers given were not the correct numbers of the projects involved.

It appears from the record here that Eproson & Co. had two jobs in Henderson county, the one here, F. A. P. 560, and the other 817–D, appellant being surety for them on both jobs, and that Eproson testified that he purchased 181,486 pounds of steel from Sheffield Steel Corporation at a price of $5,237.83, the exact amount shown by the invoices above.

▆ We are of the opinion that these notices were sufficient, under the facts surrounding this transaction, to put appellant upon inquiry, that by the use of ordinary diligence it could have ascertained that the material here involved was furnished to F. A. P. 560, and that, in the absence of a showing that it was damaged by such misdescription, the judgment against it in favor of the Sheffield Steel Corporation should not be disturbed.

R. L. Adams, a subcontractor under Eproson & Co., did work during the months of May, June, July, August, September, and October. On October 26, 1929, he filed a statement of his account with the county clerk of Henderson county, a copy of which, with a letter of approval by Eproson & Co., was filed with the state highway department and with appellant. The statement reads:

"Estimate Eproson & Company for R. L. Adams.

"S. A. P. No. 845, Highway No. 19, Henderson County, 1929—Uncl. Rdwy. Excav. Overhaul Dry Channel Excav.

|  | Cu. Yds. | Sta. Yds. | Cu. Yds. |  |
|---|---|---|---|---|
| May | 2,341 | 2,783 |  |  |
| June | 4,818 | 3,013 |  |  |
| July | 6,072 | 3,981 |  |  |
| August | 3,528 | 2,589 |  |  |
| September | 3,815 | 2,902 | 180 |  |
| October | 1,056 | 00 |  |  |
|  | 21,130 | 15,268 | 180 |  |
| Price | .16 | .03 | .16 |  |
|  | $3,380.00 | $458.04 | 28.80 | $3,867.64 |

Less previous payments of $412.25 and $745.15 ............ 1,157.40

$2,710.24

Plus Force Account of $220.34, less .10%, which is ............ 198.31

$2,908.55

Plus 330 hrs. at 25¢ per hr. for grubbing done for Eproson & Company, 82.50

$2,991.05"

Attached to the statement was the following affidavit:

"The State of Texas, County of Henderson.

"Before me, the undersigned authority, on this day personally appeared R. L. Adams, known to me to be a credible citizen of Henderson County and State of Texas, who hav-

ing been by me duly sworn, on oath deposes and says:

"That he is the same R. L. Adams who entered into a subcontract with Eproson & Company, a firm composed of G. A. Eproson, Ernest Eproson and the E. B. Truett estate, as a subcontractor upon certain highway work to be done in Henderson County, Texas, upon Highway No. 19, being known as Job S. A. P. No. 845;

"That affiant did go in and upon said work and construction and perform labor in accordance with the terms and conditions of his subcontract;

"That there is attached to this affidavit a statement of his account showing the total balance due him by Eproson & Company of $2,991.05; that said account as itemized is correct and that all just and legal offsets, payments and credits to which same is entitled shown thereon;

"That a copy of this account, together with the letter of approval thereto, signed by Eproson & Company, is herewith filed with the County Clerk of Henderson County, Texas, with the State Highway Department and with the surety upon the bond of Eproson & Company, being Detroit Fidelity & Surety Co., Republic Bank Building, Dallas, Texas, in order to protect the said R. L. Adams against any payment to be made to said contractors or to the surety upon the contractor's bond, in accordance with the provisions in such cases made and provided.

"[Signed] R. L. Adams.

"Sworn to and Subscribed Before Me, this the 26th day of October, A. D. 1929.

"[Signed] Rosabel Harris,
"Notary Public in and for Henderson County, Texas."

Appellant argues that the affidavit is insufficient in failing to set out the terms of the subcontract, the name of the owner, and that the prices charged in the account are just and reasonable and are unpaid, and that, if sufficient, the evidence showing that part of that which was furnished was furnished in May and June, as to which there was no itemized sworn statement filed as required by article 5160, and that the only statement filed by him was on the 26th day of October, which could not have been sufficient as to anything furnished prior to July 28th, and, it being impossible from the evidence to compute the amount for which he would be entitled to judgment, the judgment rendered for the full amount claimed cannot be sustained.

Article 5160, Revised Statutes (as amended by Acts 40th Leg. [1927], 1st Called Sess., c. 39, § 1), which was in force at the time of the execution of the contract and when part of the labor was performed, containing the following: "Provided further, that no person or persons, firm or corporation shall be secured in the payment of any claim contracted prior to the execution of the contract that said bond is given to secure, and provided further that all claims for labor shall be itemized and sworn to by the owner or his authorized agent and filed with the contractor or with the county clerk of the county in which said work is being prosecuted within thirty days from the date that said claim accrued and became payable, and all claims for material shall be itemized and sworn to by the owner or his authorized agent and filed with the contractor or with the county clerk of the county in which said work is being prosecuted within thirty days from the date of the delivery of said material; and any claim filed after said thirty days shall not be secured by said bond."

This statute was amended by the Acts 41st Leg. 1929, c. 226 (Vernon's Ann. Civ. St. art. 5160), to read: "Provided further, that all claims for labor and material furnished to said contractor, and all claims for labor and material furnished to any contractor shall be itemized and sworn to as required by Statutes as to mechanic's lien claims, and such claims shall be filed with the County Clerk of the County, in which said work is being prosecuted, within ninety days from the date of the delivery of said material and the performance of said work." This amendment became effective on June 12, 1929.

It follows therefore that, as to the work performed before that date, it was necessary that an itemized sworn statement be filed either with the contractor or the county clerk within thirty days from the time the claim therefor accrued and became payable.

It appears from the record that 7,159 cubic yards of unclassified excavating and 5,796 yards of station overhauling was done by Adams during those two months, and that two payments were made, totaling $1,157.40.

The excavating was priced at 16 cents per yard and the overhauling at 3 cents, making a total of $1,319.32 due Adams. Deducting from that amount the payments made, we find that there remained a balance of $161.92.

It appears from Adams' testimony that he was paid monthly, on monthly estimates, only a percentage of the work done by him during that month, and that the retained percentage was to be paid him upon the completion of his work, or upon his final estimate. We think we are justified in concluding that the above balance of $161.92 was the retained percentage on the work done during May and June which was not payable until Adams' work was completed or upon final estimate, and that the claim filed by him in October was timely as to that amount. The remainder of the claim, however, presents a more difficult question.

The amendment above quoted requires that the claim shall be filed within ninety

days from the date the work is performed, which would exclude any work performed prior to July 28, 1929.

The record fails to reveal what part of the work performed in July was performed prior to that date, and we are therefore unable to decide from the record, as it stands, the amount which Adams is entitled to recover. For that reason the judgment in his favor must be reversed and remanded. We are further of the opinion that, while the affidavit here does not exactly follow the form suggested by article 5456, Revised Statutes, yet it substantially does so, and is sufficient.

Appellant objects to the statement and affidavit of Johnson & Moore because it shows that the work they performed was for the contractors on Job No. 108–B, S. A. P. 817–D, while the contract and bond here covers Job No. 108–D. F. A. P. 560, and because the affidavit fails to show that the prices set forth in the account are just and reasonable or the name of the owner.

In the affidavit of L. B. Johnson there appears the following: "That there is attached hereto a statement of account due to Johnson & Moore by Eproson & Company, general contractors, Dallas, Texas, for the following work done upon Highway No. 19, South of the town of Athens, Texas, and being known as job No. 108–B, S. A. P. 817–D, Henderson County, Texas."

From the testimony of the witness Treadway it appears that the other contract which Eproson & Co. had in Henderson county was job No. 108–B, S. A. P. 817–D, but that it was on highway No. 31, and that the work here involved was the only job they had on highway No. 19 in Henderson county. This we think was sufficient to put the appellant on notice, and, no harm being shown to have resulted from the confusion in the numbers, the judgment should not be disturbed.

Appellant also questions the sufficiency of the affidavits filed by the following claimants: S. A. Anderson, T. H. Apple, S. R. Fleming, Grady Garner, Oscar Garner, M. F. Hill, J. J. Hogg, Ed. Holder, J. B. Lewis, G. A. McElroy, Carl White, L. J. White, E. W. Rector, J. H. Reynolds, C. R. Finer, Lloyd Paulk, Rau Paulk, and P. H. Williams, on the ground that they fail to show the name of the owner, the job or project number, and whether it was a federal or state aid project. As to all of these except J. H. Reynolds and P. H. Williams, it was agreed by appellant's counsel that the sums for which judgment was rendered were due the claimants and that they each had filed an affidavit showing that the labor was performed for Eproson & Co. on state highway 19 in Henderson county, under and by virtue of contracts between them and Eproson & Co.,

and that the prices set forth in their accounts were just and reasonable and unpaid after allowing all just and lawful offsets, payments, and credits known to them. The affidavits were, in our opinion, sufficient notice, and the assignments assailing the judgments in favor of the above should be overruled.

An objection to the affidavit of J. H. Reynolds that it fails to show that the prices "are just and reasonable" is also not well founded; the affidavit showing that the labor performed was at an agreed price.

The affidavit of Williams, showing that the labor was performed on highway 19, in Henderson county, the prices just and reasonable, and that all lawful offsets had been made, was sufficient.

We agree with the trial court's holding as to the items furnished in July by the Texas Sand & Gravel Company, and think the holding of the Commission of Appeals in American Surety Company of New York v. Axtell Co., 36 S.W.(2d) 715, should control the question as to such items.

The record shows that the Texas Sand & Gravel Company had furnished to Eproson & Co. sand and gravel used on the Anderson county job, and that it had applied the $500 payment to that account. It being the oldest part of the account, it did so properly.

We agree with the Texas Sand & Gravel Company, however, that it was entitled to the interest claimed from January 1, 1930, under the provisions of article 5070, Revised Statutes, on $821.93. Appellant's liability was fixed as far as the items furnished during March, April, and May, 1929, when the affidavits were filed with the contractor within thirty days from the date the merchandise was delivered.

At that time it became the duty of appellant to pay, and we see no good reason why, if it failed to discharge its obligation, that interest would not be collectible from it the same as it would have been in a suit against the contractor.

Judgment is here rendered that the Texas Sand & Gravel Company recover of and from appellant interest on the sum of $821.93, at the rate of 6 per cent. per annum from January 1, 1930.

U. S. Hilton's account shows that he did work on 23 days beginning on September 2, and ending October 2. The witness Reynolds testified that he saw him working on September 18th and until a few days before he quit on October 8th. John Lewis testified that Hilton worked under him for 15 or 20 days, that there was no pay day among the hands after September 2d, and that Hilton was to get 70 cents per hour.

The evidence was, we think, sufficient to establish the claim and not subject to the objections interposed.

As to the claim of the Hawn Lumber Company, appellant asserts that the trial court erred in rendering judgment for the sum of $1,031.11, and that under the pleadings and uncontroverted evidence the judgment should have been for not to exceed $675.60; that computation shows that the claim covers $105.86 on account of equipment furnished prior to July 14, 1929, or more than 90 days before the claim was filed; that $1,013.40 covers material furnished prior to said date, making a total of $1,119.26; that, deducting from said amount the two payments of $130 and $493.64, there remains a balance of $495.62 not recoverable from the surety; that $230.11 of the amount claimed after July 14th was for equipment and not recoverable, making a total of $725.73 to be deducted from the amount claimed. From an examination of the account it appears that the lumber company furnished to Eproson & Company on May 1 and 22, 1929, two shipments of cement consisting of 150 barrels each, at a price of $400.50 each, less $62.70 freight on each shipment.

These two items were delivered before the amendment to the statute became effective, and the itemized statement on the 1st of each month, as testified to by W. A. Hawn and G. A. Eproson, was sufficient under the then existing law to fix the liability of the surety for the sum of $675.60, the amount of the items, less the sum of $623.64, the payments shown by the account. The lumber company was therefore, as to said items, entitled to a judgment for $51.96.

Another shipment of 150 barrels of cement appears to have been made on June 14, 1929. This was after the amendment took effect and more than 90 days before the account was filed with the county clerk. As to such item the surety cannot be held. The same is true as to the items shown by the account to have been delivered on July 3d, 6th, 8th, 9th, and 10th, amounting to $106.

The account further shows that beginning July 15th deliveries were made up to August 19th. These items were all delivered within 90 days before the filing of the claim, and, if they come within the meaning of the expression "labor and materials in the prosecution of the work provided for in such contract," then judgment should have been rendered against appellant for their total.

Appellant's counsel in the brief asserts that the sum of $230.11 of the amount claimed for such items represented equipment, for which there could be no recovery. Counsel does not point out any evidence in the record to sustain his contention, and, from an examination of the record we fail to find anything to show that any of the items constituted equipment and not material used in the prosecution of the work.

Said items total the sum of $905.71, to which should be added $51.96, the balance due on the cement shipments of May 1st and 22d, making a total for which judgment should have been rendered of $957.67.

The judgment in favor of the Hawn Lumber Company is accordingly reformed. The lumber company has filed no brief in this court.

The account of Robbins Bros. is also attacked for its failure to show that the prices "are just and reasonable," the name of the owner, the job and project number, or that the material was furnished to a federal or state aid project.

The affidavit shows that the material was furnished to Eproson & Co. in the prosecution of their work on state highway No. 19, in Henderson county, Tex.; that Eproson & Co. was justly indebted to them in the sum of $1,684; that the bill was due and payable on October 25, 1929; and that all legal offsets, credits, and payments had been allowed on the account.

We are of the opinion that the affidavit is sufficient, but cannot agree with Robbins Bros. that the appeal was merely for delay and justifies the assessment of damages.

Mrs. E. L. Moberly, the original plaintiff, has filed a brief in the cause containing several cross-assignments attacking the action of the trial court in so far as it affects the judgment sought by her. Appellant has not questioned the judgment in her favor, and she, not having perfected an appeal, cannot have her said cross-assignments considered. 3 Tex. Jr. § 609, and authorities cited.

The judgment of the trial court is affirmed in part, modified in part, and, as modified, affirmed; reversed and rendered in part, and reversed and remanded in part, in accordance with the above holdings.