**W.G. HALL Jr., et al., Appellants and Cross-Appellees,**

v.

**HARRIS COUNTY WATER CONTROL & IMPROVEMENT DISTRICT NO. 50, et al., Appellees and Cross-Appellants.**

**No. A14–84–237–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

Dec. 20, 1984.

Charles M. Jordan, Dibrell & Green, Galveston, for appellants and cross-appellees.

Larry R. Veselka, Vinson & Elkins, Houston, for appellees and cross-appellants.

Before J. CURTISS BROWN, C.J., and CANNON and DRAUGHN, JJ.

## OPINION

CANNON, Justice.

This is an appeal from a summary judgment rendered in favor of Appellees and Cross-Appellants Harris County Water Control & Improvement District No. 50, Hugh H. Jenkins, H. Underwood, E.M. Crum, G.W. Hanks, E.D. Allen, and B.F. Adams. Appellants and Cross-Appellees, W.G. Hall Jr. and CRK, Inc. (CRK), argue that genuine issues of material fact exist which preclude the granting of summary judgment. Cross-Appellants argue that the trial court erred in denying their motion to dismiss on the basis of the statute of limitations.

In January 1977, Hall and Charter Financial Group Inc. (Charter) entered into a joint venture for the purpose of real estate development. Charter had purchased in December of 1974 an 82 acre tract of land in El Lago, Harris County, Texas. After formation of the joint venture, the property was conveyed to CRK. That tract was to be developed under the joint venture into a residential subdivision named "Taylorcrest." It was contemplated that 240–275 homes would be built in three development phases. Negotiations were commenced with Appellee Harris County Water Control and Improvement District No. 50 (the District) to procure water and sewer rights for the subdivision.

R. Eugene Read, an executive vice-president of Charter, and Hugh H. Jenkins, President of the District Board, had preliminary discussions concerning the District's ability and willingness to provide water and sewer service to the proposed subdivision. On January 26, 1977, Read sent a letter to Jenkins. In that letter, Read sought formal answers from the District of several questions concerning the water and sewage service. On February 14, 1977, Jenkins, as President of the Board of Directors of the District, sent his response to Read. In his letter, Jenkins stated that "[t]he District is willing and able to provide water and sewer service for the initial 100 residences of your proposed development on the 82 acre tract in El Lago...." The February 14th letter also stated "[w]e would plan to expand water and sewage services to meet the increased requirements imposed by the additional 175 houses by the time they are constructed. This expansion of facilities within the existing District boundaries would be at District expense." The letter continued with the following paragraph:

As stated previously, a written agreement would be required under the terms of which you would install storm sewer, water distribution and sanitary sewage collection facilities within your development to specifications acceptable to the District. You would then grant utility easements and transfer ownership of the facilities to the District after which the tract under development would be annexed into the district.

As indicated in the letter, the parties on April 19, 1978 executed a written agreement entitled "Contract for Water and Sewer Service." In the written agreement, the District agreed "to provide such services subject to the terms and conditions as herein provided."

In July of 1978, with Section I of Taylorcrest completed, Appellants sought approval of its facilities planned for Section II and services therefore. In order to obtain the needed approval for Section II, the developers' plans and specifications were submitted to the Board's engineers. Appellant Hall arranged to appear before the July 20, 1978 meeting of the Board in order to obtain preliminary approval. Prior to the July meeting, Read had represented the joint venture in all negotiations or transactions with the District. However, Read was not present at the July 20, 1978 meeting.

Prior to Hall's presentation at the meeting, an application for water and sewage service for 92 condominiums was made by American Condominium Group. That request was approved by the Board. Hall then made his request for approval of Section II of Taylorcrest. The exact response of the Board is in dispute. The minutes of the Board meeting reflect that the plans and specifications for Section II were conditionally approved. Hall characterized the conduct of the Board as an "out and out denial." Hall also said that one of the gentlemen at the meeting "was pointing his finger and shaking it and was very strong and determined and said that they weren't committed to do anything at any time and that certainly is not what the contract and the agreement called for." Shortly after the meeting, Hall wrote a letter to Jenkins expressing concern over the Board's change in position and requesting that the Board reconsider its decision on serving Section II.

On September 29, 1978, Hall and Charter filed suit against the District. Jenkins responded to Hall's earlier letter and sought to resolve the "misunderstanding" between the parties. In either February or March of 1979, the Board approved the plans and specifications for Section II of Taylorcrest.

Plaintiffs' Third Amended Original Petition was filed on January 11, 1984. In part, Hall and CRK, Inc. alleged that the January 1977 and February 1977 letters exchanged between the parties constituted a contract which had been breached; the contract executed on April 19, 1978 had been breached; the defendants were estopped from denying the existence of a binding contractual relationship; and the conduct of the individual directors of the Board and that of Adams, as the Superintendent of the District, constituted tortious interference with Plaintiffs' existing contractual rights and prospective business relations.

The District and individual defendants filed a motion to dismiss on the basis of the statute of limitations and filed a motion for summary judgment. The trial court denied the motion to dismiss but granted the motion for summary judgment. Hall and CRK appeal the granting of the summary judgment. By a cross-point of error, the District and individual defendants appeal the denial of the motion to dismiss.

Hall and CRK raise four points of error. The first point of error is that the trial court erred in granting the motion for summary judgment because genuine issues of material fact exist as to Appellants' breach of contract cause of action.

The summary judgment was granted in part because the trial court found there were no genuine issues of fact on the breach of contract cause of action. Appellees argued before the trial court that the exchange of letters in February and March 1977 did not constitute the formation of a contract and that the written contract executed in April 1978 was not breached by the District. Appellants argue that this segmentation of the facts was incorrect and produced an erroneous summary judgment. Appellants believe that the "facts of this case must rather be read as a continuum, or an integrated chain of events which *as a whole* established a contractual relationship."

The summary judgment proof established that the exchange of letters in early 1977 did not establish a contractual relationship between the parties. The February 1977 letter from Read to Jenkins sought only that Jenkins, as representative of the District, formally answer several questions as to the District's willingness and ability to provide water and sewage service to Taylorcrest. Jenkins' reply letter, in March 1977, merely gave the District's reply to those questions. In addition to those responses, the letter expressly provided that "[a]s stated previously, a written agreement would be required...." A written contract was executed in April of 1978. From these undisputed facts, the trial court was justified in determining that the exchange of letters did not constitute a contract between the parties.

Appellants argue that the District's Board of Directors breached the April 1978

contract by failing to approve, at the July 20, 1978 meeting, the plans and specifications for Section II of Taylorcrest. The District responds by arguing that the Appellants did not comply with the conditions precedent to District's obligation under the contract to provide service and that, even if the conditions were met, there is no proof that the contract has been breached.

The contract does list several conditions with which the developers had to comply. Two of those conditions were: 1) the developers had to acquire approval of the plans and specifications; and 2) the developers had to submit to the District a comprehensive development plan. The only condition precedent specifically raised in Appellees' motion for summary judgment was the failure of the developers to supply the district with a comprehensive development plan. A letter from Jenkins to the developers, dated November 1, 1978, provides some evidence that the district had not yet been provided with a comprehensive development plan. However, from documents dated prior to the July 20th meeting of the board, it could be concluded that the developers had submitted the necessary development plan.

■ A summary judgment is proper if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *McFadden v. American United Life Insurance Co.*, 658 S.W.2d 147 (Tex.1983); *Davis v. Houston Independent School District*, 654 S.W.2d 818 (Tex.App.—Houston [14th Dist.] 1983, no writ); TEX.R.CIV.P. 166–A(c). The burden of showing the lack of fact issues is upon the party moving for a summary judgment and all doubts are resolved in favor of the non-movant. *Wilcox v. St. Mary's University of San Antonio, Inc.*, 531 S.W.2d 589 (Tex.1975); 4 R. MC-DONALD, TEXAS CIVIL PRACTICE IN DISTRICT AND COUNTY COURTS, § 17.26.12 (rev. 1984). Applying this standard, we cannot say that Appellees established as a matter of law that the development plan was not submitted. Appellees argue that the developers failed to meet

other conditions. However, we refuse to address the additional conditions listed in the contract because they were not expressly presented in the motion for summary judgment. A motion for summary judgment must itself state the specific grounds on which the judgment is sought. *Inwood Forest Community Improvement Association v. R.J.S. Development Co.*, 630 S.W.2d 751 (Tex.App.—Houston [1st Dist.] 1982, no writ). This court will not consider issues not expressly set out in the motion for summary judgment. TEX.R.CIV.P. 166–A(c).

■ Appellees argue that the April 1978 contract did not require the District to unconditionally approve the developers' plans at the July 20, 1978 meeting. Appellees argue that the Board conditionally approved the plans and therefore the contract was not breached by the Board. The minutes of the Board meeting and the deposition testimony of the individual board members supports the conclusion that the plans were conditionally approved. However, Hall testified that the Board's action was an "out and out denial" of the developers' plans. Although there appears to be more summary judgment proof in support of Appellees' position, the weight of the evidence is not the standard to be applied in the review of the granting of a summary judgment. A movant must show that there are no fact issues, not that the fact issues must be resolved in the movant's favor. We cannot say that Appellees proved as a matter of law that the contract was not breached. Point of error one is sustained.

■ Point of error two is that the trial court erred in granting the motion for summary judgment because there are genuine issues of material fact relating to the promissory estoppel cause of action. As an alternative to their breach of contract claim, Appellants alleged that they reasonably relied to their detriment upon representations by the District that it would grant timely and unconditional approval for the provision of water and sewer service. In the motion for summary judgment, the Appellees argued that "... it is inherently

unreasonable to interpret the District's statement that it would expand its services to meet those needs as houses were constructed to mean it could promise immediate service." Hall's deposition testimony was that he considered the February 14, 1977 letter from Jenkins and other alleged oral statements to be a commitment by the District to provide service and that the "commitment" was relied upon. Whether that reliance was reasonable is generally a question of fact and not a question of law. As movant, Appellees had the burden of showing by summary judgment proof that as a matter of law it was not reasonable for the Appellants to rely on any of the alleged representations. We are unable to say that Appellees met that summary judgment standard. Point of error two is sustained.

The third point of error is that the trial court erred in granting the motion for summary judgment because genuine issues of material fact exist as to Appellants' claim that the directors and Adams committed tortious inference with Appellants' existing contractual relations. The fourth point is that the summary judgment was improperly granted due to fact issues on Appellants' claim of tortious inference with prospective business relations. The individual defendants responded by arguing that there is no evidence that they interfered with the April 19, 1978 agreement and assuming there is some evidence of interference, their conduct was privileged.

■ The individual Appellees rely heavily on *Sakowitz, Inc. v. Steck*, 669 S.W.2d 105 (Tex.1984). That case, like ours, involved a claim for tortious interference with existing contractual relations. The defendant, Sakowitz, moved for summary judgment arguing that any interference it may have committed was not without justification. The Supreme Court stated that to establish the cause of action of tortious interference with contract, a claimant had to show (1) that the defendant maliciously interfered with the contractual relationship, and (2) the interference was without legal justification or excuse. *Sakowitz,*

*Inc. v. Steck*, 669 S.W.2d at 107. The Supreme Court, after reviewing the summary judgment proof, held that because Sakowitz made a showing on its legal justification, but Steck produced no proof on the issue, the summary judgment was proper due to Steck's failure to introduce evidence on one of necessary elements of her claim.

■ In this case, the individual defendants asserted that their conduct was justified and/or privileged. Appellants did not produce any summary judgment proof controverting the claim of justification. Under the authority of *Sakowitz, Inc. v. Steck*, we feel constrained to hold that the trial court was correct in granting Appellees' motion for summary judgment on the tortious inference of contract cause of action due to the Appellants' failure to controvert Appellees' summary judgment proof. Point of error three is overruled.

Appellants' final point of error deals with the claim of tortious interference with prospective business relations. The claim is based on the effect the conduct of the individual defendants had on the Appellants' business relations with potential home builders in Taylorcrest.

■ Appellees moved for summary judgment on the basis that Appellants failed to allege that the directors acted with malice, there is no evidence in the record that the directors acted with the malice required to establish a claim of tortious interference with prospective business relations, and Appellants failed to show that the individual defendants were unjustified in their conduct. Since there is no evidence in the record that the individual defendants acted intentionally or maliciously to interfer with the Appellants' prospective business relations and such intentional or malicious conduct is an element of Appellants' claim, the trial court did not err in granting summary judgment as to the tortious interference with prospective business relations claim. Point of error four is overruled.

By a cross-point of error, the District and individual defendants argue that the trial

court erred in not granting their motion to dismiss. In that motion, it is argued that any and all actions alleged by CRK, Inc. are barred by limitations and Hall is restricted to only the causes of action assigned to him by Charter, all others being barred by limitations.

 When suit was first filed in this case CRK, Inc. was not listed as a party. CRK was not listed as a party in either of the two Original Petitions or Plaintiffs' First Amended Original Petition. CRK was not listed as a party on any pleading until August 8, 1983 when Plaintiffs' Second Amended Original Petition was filed. Even if we assume that the statute of limitations did not start running until March of 1979 when the District actually approved the plans for Section II of Taylor-crest, it would appear that CRK did not bring its cause of action within four years of March 1979. Therefore CRK, Inc. is barred by limitations from asserting any cause of action against Cross-Appellants. TEX.REV.CIV.STAT.ANN. art. 5527 (Vernon Supp.1984).

Although Hall was originally named as a plaintiff in the original petitions, he was not included as a party in Plaintiffs' First Amended Original Petition filed July 11, 1983. Cross-Appellants argue that limitations were not tolled as to Hall's later joinder as a plaintiff in Plaintiffs' Second Amended Original Petition filed August 8, 1983. However, the record contains an assignment from Charter Financial Group, Inc. to Hall of whatever causes of actions Charter had. Even if Hall's personal causes of action have been cut off by limitations, an issue we do not decide, Hall may still assert the causes of action covered by the assignment from Charter. The cross-point of error is sustained as to CRK, Inc., but is overruled as to Hall.

The judgment of the trial court is affirmed as to the tortious interference claims. The judgment is reversed and remanded as to the breach of contract and promissory estoppel causes of action. The judgment is reversed and rendered that CRK, Inc., is barred by limitations from asserting any cause of action.