**1001 McKINNEY LTD., Appellant,**

v.

**CREDIT SUISSE FIRST BOSTON MORTGAGE CAPITAL, Credit Suisse First Boston LLC, Situs, Inc., Situs Capital Services, Inc., Situs Realty Services, Inc., and Situs Servicing Inc., Appellees.**

No. 14–04–00844–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Nov. 23, 2005.

Rehearing Overruled March 16, 2006.

David M. Gunn, John Sidney Adcock, Houston, for appellants.

Reagan W. Simpson, Reginald Ross Smith, Penn Christopher Huston, Houston, for appellees.

Panel consists of Chief Justice HEDGES, Justice FROST, and Senior Chief Justice MURPHY.*

## OPINION

ADELE HEDGES, Chief Justice.

Appellant, 1001 McKinney, Ltd., filed suit against Credit Suisse First Boston

---

* Senior Chief Justice Paul C. Murphy sitting by assignment.

LLC and Situs Services to enforce an alleged oral loan agreement. The trial court granted summary judgment in favor of Credit Suisse First Boston and the Situs defendants. We reverse and remand in part and affirm in part.

## I. BACKGROUND

In the late 1990's, Larry Levine formed a partnership to renovate a downtown office building at 1001 McKinney. He named the partnership 1001 McKinney, Ltd. (the partnership). To fund the renovation, the partnership sought and obtained a loan in excess of $39 million from Credit Suisse First Boston (CSFB).[1] The $39 million represented ninety percent of the funds needed to renovate the building. The remaining ten percent was provided by the individuals who made up the partnership.

In the process of renovation, the partnership discovered it needed an additional $7.5 million to complete the project. The partnership asserts the additional funds were needed to build extra office and retail space on the lower floors of the building. Levine and other representatives of the partnership met with Tony Poll and Mark Finerman of CSFB and discussed the partnership's need for additional funds. In his affidavit before the trial court, Levine stated that Poll and Finerman told him CSFB had "no problem" lending additional funds to the partnership. According to Levine, at a meeting in Las Vegas in November 1999, Poll and Finerman promised that CSFB would fund an additional $6.75 million and that the loan would be documented by January. In January, 2000, CSFB informed the partnership it would not lend the additional $6.75 million.

The partnership subsequently filed suit against CSFB Mortgage Capital, the enti-ty that funded the original loan; CSFB LLC, its affiliate; and the Situs companies. The partnership alleged causes of action for (1) statutory and common law fraud, (2) civil conspiracy, (3) negligent misrepresentation, and (4) breach of oral contract. In its third amended petition, the partnership added a plea of promissory estoppel.

CSFB and the Situs defendants filed a motion for summary judgment in which they asserted that the statute of frauds codified in section 26.02 of the Texas Business and Commerce Code bars enforcement of the oral agreement as a matter of law. In its reply to the partnership's response, CSFB added the contention that the one-year statute of frauds codified in section 26.01(b)(6) of the Business and Commerce Code also barred enforcement of the oral agreement. The trial judge denied the motion for summary judgment.

Before trial, CSFB filed a motion for reconsideration of its prior motion for summary judgment. In that motion, CSFB renewed its argument that sections 26.01 and 26.02 of the Texas Business and Commerce Code barred enforcement of the agreement. The trial court granted summary judgment in favor of CSFB and Situs as follows:

> Defendant's Motion for Summary Judgment is GRANTED as to Defendant Credit Suisse First Boston Mortgage Capital because TEXAS BUS. & COM.CODE § 26.02, and § 26.01(b)(6) bars [sic] Plaintiff's action.

> Defendants' Motion for Summary Judgment is GRANTED as to Defendant Credit Suisse First Boston LLC because there is no evidence that any actions were taken by an agent or representative of, at the direction of, or on the

---

1. Credit Suisse First Boston Mortgage Capital    funded the loan.

behalf of Credit Suisse First Boston LLC.

Defendants' Motion for Summary Judgment is GRANTED as to Defendants Situs, Inc., Situs Capital Services, Inc., Situs Realty Services, Inc., and Situs Servicing Inc.

Appellant does not appeal the judgment in favor of the Situs defendants.

## II. STANDARD OF REVIEW

Under the traditional standard for summary judgment, the movant has the burden to show there is no genuine issue of material fact and that judgment should be granted as a matter of law. TEX.R. CIV. P. 166a(c); *KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex.1999). In reviewing a grant of summary judgment, we take as true all evidence favorable to the nonmovant and make all reasonable inferences in the non-movant's favor. *Nixon v. Mr. Property Mgmt. Co.*, 690 S.W.2d 546, 549 (Tex.1985). A defendant, as movant, is entitled to summary judgment if it (1) disproves at least one element of the plaintiff's theory of recovery or (2) pleads and conclusively establishes each essential element of an affirmative defense, thereby rebutting the plaintiff's cause of action. *Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 425 (Tex. 1997).

A no-evidence motion for summary judgment is proper when there is a complete absence of evidence of one or more essential elements of a claim or defense on which an adverse party has the burden of proof at trial. TEX.R. CIV. P. 166a(i); *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 207 (Tex.2002).

## III. SUMMARY JUDGMENT GROUNDS

In its first sub-issue, appellant contends the trial court erred in granting summary judgment on a ground that was not expressly presented in the motion for summary judgment. Appellant contends appellees did not raise the issue of the one-year statute of frauds found in section 26.01(b)(6) in their motion for summary judgment. Appellees raised the issue of the one-year state of frauds in their reply to the appellant's response to motion for summary judgment and in the motion for reconsideration.

■■■ Rule 166a requires the motion for summary judgment to state the specific grounds therefor, and the moving party is entitled to judgment as a matter of law on the issues expressly set out in the motion or in an answer or any other response. TEX.R. CIV. P. 166a(c). A motion for summary judgment must itself expressly present the grounds upon which it is made. *McConnell v. Southside Ind. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex.1993). In the absence of the nonmovant's consent, a movant may not raise a new ground for summary judgment in a reply to the non-movant's response. *Sanders v. Capitol Area Council*, 930 S.W.2d 905, 911 (Tex. App.-Austin 1996, no writ).

■■■ Appellees contend appellant had actual notice of the ground twenty-one days in advance of submission of the motion for reconsideration. Notice, however, is not the only purpose behind the supreme court's strict interpretation of Rule 166a(c). The standard set forth in *McConnell* does not require a showing that the nonmovant was given appropriate notice or that the opposing party was misled concerning the grounds for summary judgment. *Coastal Cement Sand Inc. v. First Interstate Credit Alliance, Inc.*, 956 S.W.2d 562, 566 (Tex.App.-Houston [14th Dist.] 1997, pet. denied). The standard is simply whether the grounds are explicitly stated in the motion itself. *Id.* Accordingly, the judgment of the trial court is incor-

rect in that it recites section 26.01(b)(6) as a bar to appellant's action. Because appellees did not raise section 26.01(b)(6) as a bar in their motion for summary judgment, we will address only the trial court's ruling that section 26.02 bars appellant's action.[2]

## IV. STATUTE OF FRAUDS

Appellant contends that the trial court erred in granting summary judgment on the ground that the statute of frauds prevents enforcement of the alleged loan agreement. The trial court found that sections 26.02 and 26.01(b)(6) of the Texas Business and Commerce Code bar appellant's claim against CSFB Mortgage Capital. Section 26.02(b) states: "A loan agreement in which the amount involved in the loan agreement exceeds $50,000 in value is not enforceable unless the agreement is in writing and signed by the party to be bound or by that party's authorized representative." TEX. BUS. & COM.CODE ANN. § 26.02(b). Loan agreement is defined as:

> one or more promises, promissory notes, agreements, undertakings, security agreements, deeds of trust or other documents, or commitments, or any combination of those actions or documents, pursuant to which a financial institution loans or delays repayment of or agrees to loan or delay repayment of money, goods, or another thing of value or to otherwise extend credit or make a financial accommodation.

TEX. BUS. & COM.CODE ANN. § 26.02(a)(2). Because the alleged oral promise of Poll and Finerman to lend $6.75 million constitutes a loan agreement that exceeds $50,000, the trial court found the agreement unenforceable.

Appellant contends that section 26.02 does not apply to this transaction because "[t]he CSFB Defendants are not 'financial institutions'" as defined in the statute. Financial institution is defined as:

> a state or federally chartered bank, savings bank, savings and loan association, or credit union, a holding company, subsidiary, or affiliate of such an institution, or a lender approved by the United States Secretary of Housing and Urban Development for participation in a mortgage insurance program under the National Housing Act (12 U.S.C. Section 1701 et seq.).

TEX. BUS. & COM.CODE ANN. § 26.02(a)(1). Appellant contends that appellees failed to prove that they are chartered by a United States federal or state banking authority or approved by the Department of Housing and Urban Development (HUD) for participation in a mortgage insurance program under the National Housing Act.

In their reply to appellant's response, appellees attached the affidavit of Thomas M. Zingalli, the director in the Controller's Division of CSFB LLC. In his affidavit, Zingalli stated that the Controller's Division maintains the books and records of CSFB, including information regarding licenses and government approvals held by CSFB and its related companies. Zingalli stated that he had been an employee of

**2.** Appellees contend appellant waived any error in the judgment by failing to advise the trial court that it had granted summary judgment on grounds that were not presented in the motion. For this proposition, appellees cite *GXG, Inc. v. Equitable Bank–Dallas*, 1997 WL 51210 (Tex.App.-Dallas 1997, no writ), in which the court of appeals held that a trial court's granting of more relief than requested in the motion for summary judgment is not fundamental error and is waived unless raised in the trial court. Appellees have not cited, nor have we been able to find, any other court that has followed the reasoning in *GXG*. The supreme court found in *McConnell* that a non-movant is not required to except to a movant's failure to assert specified grounds in the motion for summary judgment. 858 S.W.2d at 342. We therefore decline to require such an exception.

CSFB since 1985 and that during his tenure as director in the Controller's Division he became familiar with the licenses and government approvals held by CSFB. Zingalli stated that during the time period from at least June 1998 through June 19, 2001, CSFB Mortgage Capital LLC was approved by the United States Department of Housing and Urban Development as a lender in the HUD/FHA Title I program and as a mortgagee in the HUD/FHA Title II program. Zingalli further listed the HUD Mortgagee numbers for CSFB. Attached to Zingalli's affidavit was a letter from the director of the Lender Approval and Recertification Division of the Department of Housing and Urban Development in which the director certified that CSFB Mortgage Capital LLC was a HUD/FHA approved mortgagee or lender as of August 16, 1984, and that approval remained in effect as of the date of the letter, which was June 19, 2001.

Appellant argues that (1) appellee's summary judgment proof shows no approval by the secretary of HUD, (2) Zingalli's affidavit is conclusory, and (3) the letter from HUD is hearsay. On motion for summary judgment, appellant did not raise the issue of approval by the secretary of HUD.

### A. Zingalli Affidavit

■ Appellant contends that appellees' summary judgment proof was insufficient to show that CSFB is a financial institution because Zingalli's affidavit is conclusory. Rule 166a(f) requires that "supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Tex.R. Civ. P. 166a(f). Conclusory statements in an affidavit unsupported by facts are insufficient

to support or defeat summary judgment. *Wadewitz v. Montgomery*, 951 S.W.2d 464, 466 (Tex.1997). A conclusory statement is one that does not provide the underlying facts to support the conclusion. *Rizkallah v. Conner*, 952 S.W.2d 580, 587 (Tex.App.-Houston [1st Dist.] 1997, no writ).

■ Zingalli's affidavit is sufficiently supported by underlying facts to show that CSFB is a financial institution within the meaning of section 26.02. Zingalli established that he had personal knowledge that CSFB Mortgage Capital was approved by HUD as a lender in the mortgage insurance program under Titles I and II of the National Housing Act. Zingalli's personal knowledge resulted from his employment as director of the Controller's Division of CSFB, which keeps records of all licenses and government approvals held by CSFB. Zingalli listed HUD mortgagee license numbers for CSFB. Zingalli also attached the letter from HUD as further support of his knowledge. Zingalli's affidavit was sufficient to establish that CSFB Mortgage Capital is a financial institution. It is not conclusory; rather, it contains logical conclusions based on underlying facts.

### B. HUD Letter

■ Appellant challenges the letter from HUD as improper summary judgment proof because it is hearsay. Appellees respond that the letter is admissible under the public records exception to the hearsay rule. The public records exception to the hearsay rule provides, among other things: "Records, reports, statements or data compilations, in any form, of public offices or agencies setting forth (A) the activities of the office or agency . . . ." are not excluded by the hearsay rule. Tex.R. Evid. 803(8). Rule 803(8) does not require a formal predicate to be laid through a witness, but the offered document must be shown to satisfy the require-

ments of the rule. *State v. Foltin*, 930 S.W.2d 270, 272–73 (Tex.App.-Houston [14th Dist.] 1996, writ denied).

■ The HUD letter is admissible as an exception to the hearsay rule because it meets the threshold requirements of Rule 803(8). First, the record reflects the letter from HUD is a report "setting forth the activities of the office or agency." Second, the circumstances do not indicate a lack of trustworthiness. Rule 803(8) creates a presumption of admissibility, with the burden being placed on the party opposing the admission of the report to show its untrustworthiness. *Beavers v. Northrop Worldwide Aircraft Services Inc.*, 821 S.W.2d 669, 675 (Tex.App.-Amarillo 1991, writ denied). The trial judge's ruling on the tender of such a report is reviewed under an abuse of discretion standard. *Id.*

Appellant contends that the letter lacks trustworthiness because it appears to have been created for purposes of litigation. We disagree with this characterization. The letter is dated June 19, 2001, almost six months before the filing of appellant's suit in December 2001. Further, the question of whether appellees were financial institutions within the meaning of the statute of frauds was not raised until appellant's response to the motion for summary judgment filed September 15, 2003. The record does not support the contention that the letter was created for the purpose of this litigation. Therefore, the trial court did not abuse its discretion in admitting the HUD letter under the public records exception to the hearsay rule. The uncontroverted evidence establishes that the Department of Housing and Urban Development approved CSFB Mortgage Capital for participation in programs under the National Housing Act.

## C. The Alleged Loan Agreement

■ Appellant alleges that Poll and Finerman were employees of CSFB LLC at the time they made the oral promise to lend $6.75 million. Appellant argues that because appellees presented evidence that CSFB Mortgage Capital is a financial institution, but not CSFB LLC, the statute of frauds does not apply to CSFB LLC.

Levine stated in his affidavit that Poll and Finerman agreed to lend the additional funds with terms similar, if not identical, to the original loan agreement. It is undisputed that the original loan was funded by CSFB Mortgage Capital. There is no evidence that any representative of appellant thought the loan would be funded by CSFB LLC. Because the alleged agreement was oral, the statute of frauds prohibits proof of the agreement. *See* Tex. Bus. & Com.Code Ann. § 26.02(b). Therefore, summary judgment on the breach of oral contract cause of action is appropriate as to all defendants.

## V. Tort Causes of Action

In addition to breach of the oral contract, appellant alleged statutory fraud, negligent misrepresentation, and conspiracy causes of action. Appellant contends even if the statute of frauds prohibits enforcement of the alleged oral agreement, it can maintain the tort causes of action.

■ To determine whether the tort actions can be maintained, we look to the substance of the cause of action rather than the manner in which it was pleaded. *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 617–18 (Tex.1986). Tort obligations are those imposed by law when a person breaches a duty that is independent from promises made between the parties to a contract; contractual obligations are those that result from an agreement between parties, which is breached. *Southwestern Bell Tel. Co. v. DeLanney*, 809

S.W.2d 493, 494 (Tex.1991). If the defendant's conduct would give rise to liability only because it breaches the parties' agreement, the plaintiff's claim ordinarily sounds only in contract. *Id.* If the defendant's conduct would give rise to liability independent of the fact that an agreement exists between the parties, the plaintiff's claim may also sound in tort. *Id.*

Each tort claim alleged in appellant's petition arises from the alleged oral agreement. When the injury is only the economic loss to the subject of the contract itself, the action sounds in contract alone. *Reed,* 711 S.W.2d at 617–18. Where, as here, a plaintiff is seeking to recover what he would have gained had the promise been performed, the gist of his cause of action is the breach of the promise. *Haase v. Glazner,* 62 S.W.3d 795, 799 (Tex. 2001). Because appellant's tort causes of action for statutory fraud, negligent misrepresentation, and conspiracy arise from the alleged oral agreement, summary judgment on those claims is proper.

## VI. PROMISSORY ESTOPPEL

Appellant contends that appellees are estopped from claiming the statute of frauds as a defense to their breach of contract claim because Poll and Finerman promised to prepare and sign written agreements to document the new loan. For promissory estoppel to create an exception to the statute of frauds, there must have been a promise to sign a written agreement that had been prepared and that would satisfy the requirements of the statute of frauds. *Nagle v. Nagle,* 633 S.W.2d 796, 800 (Tex.1982). It is the promise to sign a written agreement or enter into a written agreement that is determinative. *Southmark Corp. v. Life Investors, Inc.,* 851 F.2d 763, 769 (5th Cir. 1988). Promissory estoppel sufficient to remove a contract from the statute of frauds requires that the promisor agree to sign a document that had already been prepared or "whose wording had been agreed upon" that would satisfy the statute of frauds. *Id.* at 766. A mere promise to prepare a written contract is not sufficient. *Beta Drilling, Inc. v. Durkee,* 821 S.W.2d 739, 741 (Tex.App.-Houston [14th Dist.] 1992, writ denied).

Here, Levine testified that Poll and Finerman promised to make the additional loan under the same terms as the original loan. Poll and Finerman promised to prepare and sign written agreements to document the new loan. No documents were prepared. Further, Levine testified in his deposition that the parties never agreed on the wording of the loan document. Appellant presented no evidence that a written agreement had been prepared or that the parties had agreed on the wording of the agreement. Therefore, appellant failed to raise the essential elements of its claim of estoppel.

## VII. COMMON LAW FRAUD

Appellant also asserted a cause of action for common law fraud. Appellant contends its fraud claim may not contravene the statute of frauds to the extent it seeks out-of-pocket damages incurred in reliance on appellees' alleged misrepresentations. *See Haase,* 62 S.W.3d at 799. In its petition, appellant alleges it continued to renovate the building and enter into lease agreements in reliance that appellees would lend the additional $6.75 million. The summary judgment record reveals the partnership relied on the alleged promise to lend additional funds and continued construction of the entire available office and retail space in the building. Reliance damages, such as money spent on additional construction, are not part of the benefit of the alleged bargain between the parties. *See Haase,* 62 S.W.3d at 800 (holding that

despite the fact that the statute of frauds prevents enforcement of the agreement, a plaintiff can recover out-of-pocket damages incurred in reliance on the alleged false representation). Therefore, appellant raised a fact issue with regard to recovery of out-of-pocket damages incurred in reliance on the alleged misrepresentation.

To prevail on its fraud claim, appellant must show that it actually and justifiably relied on the representation and thereby suffered injury. *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex.2001). Appellees contend that even if appellant can show reliance damages, it cannot show that it justifiably relied on the alleged promises made by Poll and Finerman. Appellees argue that Levine and his partners were sophisticated developers and knew that any oral loan agreement would not be enforceable. Appellant, on the other hand, presented summary judgment proof that it had a business relationship with appellees and was justified in relying on the alleged promise to fund the additional loan.

In the context of common law fraud, courts have uniformly treated the issue of justifiable reliance as a question for the factfinder. *Coston v. Bank of Malvern*, 991 F.2d 257, 260 (5th Cir.1993); *Hall v. Harris County Water Control & Improvement Dist. No. 50*, 683 S.W.2d 863, 868 (Tex.App.-Houston [14th Dist.] 1984, no writ) (whether plaintiff reasonably relied on promise is generally a question of fact). In this case, appellant presented evidence that it relied on appellees' promise by leasing office space and entering into agreements with tenants for improvements that could not otherwise be made without the additional funding. Appellees, on the other hand, presented evidence that appellant is a sophisticated developer and was not justified in relying on an oral promise to lend money. The question of justifiable reliance depends heavily on the relationship between the parties and their relative sophistication.

Viewing the facts most favorably to appellant, we believe that a genuine issue of material fact exists as to whether appellant reasonably relied to its detriment on appellees' promises. Any justifiable reliance the jury may find on retrial stems from the verbal representation made in Las Vegas in November, 1999. Therefore, on remand, out-of-pocket damages are limited to those expenses incurred between the date of the alleged oral agreement in November 1999 and the date in January 2000 when appellees informed appellant they would not fund the loan. Therefore, to the extent appellant seeks out-of-pocket damages that occurred after the alleged oral agreement to lend additional money, in reliance on the alleged oral promise, summary judgment is not proper.

## VIII. CONCLUSION

Under the facts of this case, to the extent that appellant seeks to recover the benefit of the bargain damages related to an alleged oral agreement that is unenforceable under the statute of frauds, the statute bars appellant's tort and contract causes of action. Appellant's common law fraud claim for out-of-pocket damages incurred in reliance on the alleged promise survives the statute of frauds. Accordingly, we reverse the trial court's judgment insofar as it finds the statute of frauds precludes appellant's fraud claim for out-of-pocket damages and remand to the trial court for proceedings consistent with this opinion. We affirm the summary judgment with regard to appellant's remaining causes of action.

FROST, J., concurring and dissenting.

KEM THOMPSON FROST, Justice, concurring and dissenting.

The statute of frauds bars any recovery by 1001 McKinney Ltd. (the "Borrower")

against Credit Suisse First Boston Mortgage Capital (the "Lender")[1] and Credit Suisse First Boston LLC[2] (the "Lender's Parent") on the alleged oral contract, but not for the reasons stated in the majority opinion. The court correctly affirms the summary judgment in favor of the Lender and the Lender's Parent (collectively, the "Credit Suisse Parties") on the Borrower's claims alleging breach of an alleged oral contract, statutory fraud, negligent misrepresentation, conspiracy, and promissory estoppel. The court also correctly concludes that, because the Borrower's statutory fraud, negligent misrepresentation, and conspiracy claims arise from the alleged oral loan agreement, the trial court did not err in entering summary judgment on these tort claims. But the court errs in concluding there is a fact issue as to whether the Borrower's claimed reliance on the alleged fraudulent representations of the Credit Suisse Parties was justifiable. Therefore, the court should not reverse and remand the part of the Borrower's common-law fraud claim that seeks out-of-pocket damages. Instead, the court should affirm the trial court's judgment in all respects.

## I. Contract Claims Against the Lender's Parent

The court reaches the correct result in determining that the Borrower's contract claim is unenforceable based upon section 26.02(b) of the Texas Business and Commerce Code, but the majority's analysis is flawed in some respects.

1. These terms—"Borrower" and "Lender"—are the same terms used to define these parties in the Loan Agreement, dated as of June 16, 1998, in which the Lender agreed to lend the Borrower $39,195,000.

2. Credit Suisse First Boston LLC is the successor by merger to Credit Suisse First Boston Corporation.

## A. *The Borrower waived its objections to the summary-judgment proof.*

The majority addresses the merits of the Borrower's objections to the affidavit of Thomas Zingalli, a Director in the Controller's Division of the Lender's Parent, and the documents described in his affidavit. With one exception, it is unnecessary to reach the Borrower's arguments regarding the alleged inadmissibility of the summary-judgment proof because under this court's precedent, the asserted objections were waived when the Borrower failed to secure rulings on them. *See Nowak v. DAS Invest. Corp.*, 110 S.W.3d 677, 679 (Tex.App.-Houston [14th Dist.] 2003, no pet.) (stating objection to summary-judgment affidavit waived by failure to obtain ruling.) The exception is the objection that the Zingalli affidavit is conclusory. Though no objection was needed to preserve this issue for appellate review,[3] it has no merit. The Zingalli affidavit is clear and specific and gives the factual foundation for the matters stated. It is not conclusory. *See Hou–Tex, Inc. v. Landmark Graphics*, 26 S.W.3d 103, 112 (Tex.App.-Houston [14th Dist.] 2000, no pet.) (holding summary-judgment affidavit was not conclusory). The court should not reach the merits of any of the other objections to the Zingalli affidavit because these objections were waived when the Borrower failed to obtain rulings from the trial court at or very near the time the trial court ruled on the motion for summary judgment. *See Dolcefino v. Randolph*, 19 S.W.3d 906, 926 (Tex.App.-Houston [14th Dist.] 2000, no pet.).

3. *See Hou–Tex., Inc. v. Landmark Graphics*, 26 S.W.3d 103, 112 (Tex.App.-Houston [14th Dist.] 2000, no pet.) (holding objection that affidavit is conclusory is a substantive defect that can be raised for the first time on appeal).

The Borrower argues that it preserved error with respect to the remaining objections because the trial court necessarily overruled them when it granted the Credit Suisse Parties leave to submit this summary-judgment proof. However, allowing a party to supplement proof in a summary-judgment proceeding does not necessarily imply a ruling as to the admissibility of the proffered evidence. *See, e.g., ABT Galveston Ltd. P'ship v. Galveston Cent. App. Dist.*, 137 S.W.3d 146, 158 n. 26 (Tex.App.-Houston [1st Dist.] 2004, no pet.); *Sunshine Mining & Ref. Co. v. Ernst & Young*, 114 S.W.3d 48, 51 (Tex.App.-Eastland 2003, no pet.); *Allen v. Albin*, 97 S.W.3d 655, 663 (Tex.App.-Waco 2002, no pet.); *In re Estate of Loveless*, 64 S.W.3d 564, 573 (Tex.App.-Texarkana 2001, no pet.); *Well Solutions, Inc. v. Stafford*, 32 S.W.3d 313, 317 (Tex.App.-San Antonio 2000, no pet.); *Chapman Children's Trust v. Porter & Hedges, L.L.P.*, 32 S.W.3d 429, 435–36 (Tex.App.-Houston [14th Dist.] 2000, pet. denied); *Dolcefino*, 19 S.W.3d at 926. *But see Blum v. Julian*, 977 S.W.2d 819, 823–24 (Tex.App.-Fort Worth 1998, no pet.); *Mowbray v. Avery*, 76 S.W.3d 663, 689 n. 45 (Tex.App.-Corpus Christi 2002, no pet.). Absent an implied or express ruling on the objections, the objections are waived. The court should not conduct a substantive analysis as to the merits of waived objections.[4]

**B.** ***The Lender's Parent did not establish that it fell within the definition of "financial institution" under Section 26.02(a)(1); however, the loan agreement alleged by the Borrower is nevertheless unenforceable under section 26.02(b).***

The Borrower asserts that the Lender's Parent is not entitled to the benefit of section 26.02(b) because the Lender's Parent is not a "financial institution" under section 26.02(a)(1) of the Texas Business and Commerce Code, which reads:

> (1) "Financial institution" means a state or federally chartered bank, savings bank, savings and loan association, or credit union, a holding company, subsidiary, or affiliate of such an institution, or a lender approved by the United States Secretary of Housing and Urban Development for participation in a mortgage insurance program under the National Housing Act (12 U.S.C. Section 1701 et seq.).

TEX. BUS. & COM.CODE ANN. § 26.02(a)(1) (Vernon 2002).

Neither the Lender nor the Lender's Parent established that either of them was a state or federally chartered bank, savings bank, savings and loan association, or credit union, or a holding company, subsidiary, or affiliate of such an institution. The summary-judgment proof establishes only that the Lender is a HUD-approved lender as that term is used in section 26.02(a)(1). The statute does not state that an affiliate of a HUD-approved lender is a "financial institution"; rather, to qualify as a "financial institution" under this provision, the Lender's Parent would need to show that it is (1) a state or federally chartered bank, savings bank, savings and loan association, or credit union, (2) a holding company, subsidiary, or affiliate of such an institution, or (3) a HUD-approved lender. The Lender's Parent did not establish any of these things. Therefore, the Lender's Parent did not demonstrate that it falls within the definition of "financial institution" under section 26.02(a)(1).

---

4. For this reason, there is no need to address whether the majority's substantive analysis is correct.

The majority concludes that the Lender's Parent is entitled to summary judgment because there is allegedly no evidence that any representative of the Borrower thought the loan would be funded by the Lender's Parent. It seems clear from the Borrower's pleadings and summary-judgment response that the Borrower sufficiently alleged a loan agreement involving the Lender's Parent. According to the Borrower's pleadings, representatives of the Borrower conferred with authorized representatives of the Lender's Parent "who were in turn authorized to act on behalf of [the Lender] concerning potential financing for the purchase of the building at 1001 McKinney, renovation of the office building, and construction of a parking garage." The Lender funded the original loan. The Borrower alleges that Tony Poll and Mark Finerman—allegedly agents of both the Lender and the Lender's Parent—made oral promises to the Borrower in November 1999, to make an additional loan that was to have been funded in early 2000 "pursuant to the same business terms that were made part of the original loan to the [Borrower]." Essentially, the Borrower alleges the Lender's Parent was to fund the promised loan through the Lender—its "funding conduit." [5]

Nonetheless, the Lender's Parent is entitled to summary judgment on the Borrower's alleged oral contract claim. The reason, however, is that the purported loan agreement—as alleged by the Borrower—is not enforceable under section 26.02(b) of the Texas Business and Commerce Code.

"Loan agreement" is defined broadly in the statute:

"Loan agreement" means one or more promises, promissory notes, agreements, undertakings, security agreements, deeds of trust or other documents, or commitments, or any combination of those actions or documents, pursuant to which a financial institution loans or delays repayment of or agrees to loan or delay repayment of money, goods, or another thing of value or to otherwise extend credit or make a financial accommodation. The term does not include a promise, promissory note, agreement, undertaking, document, or commitment relating to:

(A) a credit card or charge card; or

(B) an open-end account, as that term is defined by Section 301.002, Finance Code, intended or used primarily for personal, family, or household use.

---

**5.** In the trial court, both of the Credit Suisse Parties moved for summary judgment as to the Borrower's breach-of-oral-contract claim based on the statute of frauds contained in section 26.02(b). At the time of this motion, the Borrower alleged in its second amended petition that both of the Credit Suisse Parties made these alleged promises in November of 1999, and were liable to the Borrower for breach of an alleged oral contract. After the trial court denied this motion for summary judgment but before the trial court reconsidered its decision and granted this motion, the Borrower amended its petition. In this third amended petition, the Borrower added some new allegations and focused more attention on the Lender's Parent; however, the essential facts and allegations are not substantially different from the prior petition. The third amended petition does not add any new claims, and in it, the Borrower continues to assert a breach-of-oral-contract claim against both the Lender and the Lender's Parent. Therefore, the section 26.02(b) summary-judgment ground is sufficiently broad to cover the breach-of-oral-contract claims asserted against the Lender and the Lender's Parent in the Borrower's third amended petition. *See Wilson v. Korthauer*, 21 S.W.3d 573, 579 (Tex. App.-Houston [14th Dist.] 2000, pet. denied) (holding that, if the summary-judgment grounds are sufficiently broad to encompass the claims contained in an amended pleading filed after the motion, then movants need not amend their motion for summary judgment to address this amendment).

TEX. BUS. & COM.CODE ANN. § 26.02(a)(2) (Vernon 2002). The summary-judgment proof shows that the Lender's Parent was not a party to the original Loan Agreement and does not make real estate loans. The Borrower, however, alleged that the Lender's Parent "was engaged in the investment banking business, and as part of that business originated commercial mortgage loans, using [the Lender] as a funding entity for those loans."

Under section 26.02(b), a loan agreement in which the amount involved exceeds $50,000 is not enforceable unless it is in writing and signed by the party to be bound or by that party's authorized representative. Notably, the statute does not rest the enforceability determination merely upon whether the agreement was made *by* a financial institution; rather, the statute renders unenforceable any loan agreement "pursuant to which a financial institution loans ... money." *See* TEX. BUS. & COM.CODE ANN. § 26.02(a), (b). Under the Borrower's pleadings, the alleged agreement by the Lender's Parent is an agreement pursuant to which the Lender—a financial institution as defined in the statute—loans money. Thus, any such loan agreement made by the Lender's Parent is unenforceable under the plain meaning of section 26.02. *See* TEX. BUS. & COM.CODE ANN. § 26.02.

Although the trial court granted summary judgment in favor of the Lender in part based upon the section 26.02(b) ground, the trial court granted summary judgment in favor of the Lender's Parent on a ground other than section 26.02(b). The majority bases its determination that summary judgment was proper as to the Lender's Parent upon section 26.02(b). However, even though the trial court declined to grant summary judgment in favor of the Lender's Parent based upon the section 26.02(b) ground, this court can, and

in the interest of judicial economy should, affirm the trial court's summary judgment based upon this ground. *See Cincinnati Life Ins. Co. v. Cates,* 927 S.W.2d 623, 625–26 (Tex.1996) (holding that courts of appeals, in the interest of justice, may consider summary-judgment grounds that the movant presented to the trial court but upon which the trial court did not rule in granting the movant a final summary judgment).

## II. Common–Law–Fraud Claim

Although the court correctly affirms the trial court's summary-judgment as to the Borrower's claims for statutory fraud, negligent misrepresentation, breach of oral contract, and promissory estoppel, the court errs in reversing the trial court's judgment as to the common-law fraud claim. The Borrower cannot prevail on its common-law fraud claim because the Borrower cannot show justifiable reliance upon the alleged misrepresentations.

Because one of the essential elements of the Borrower's common-law fraud claim is that the Borrower justifiably relied upon the alleged misrepresentation by the Credit Suisse Parties, if the Borrower cannot demonstrate this element, it cannot possibly prevail on its fraud claim. *See Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.,* 51 S.W.3d 573, 577 (Tex.2001) (stating that justifiable reliance is an essential element in a common-law fraud claim). In their motion for summary judgment, the Credit Suisse Parties asserted a no-evidence ground as to this essential element of the Borrower's common-law fraud claim. The Borrower failed to come forward with evidence creating a genuine issue of material fact demonstrating justifiable reliance upon the Credit Suisse Parties' alleged oral loan agreement.

The Borrower claims that Poll and Finerman made the alleged oral loan commit-

ment to one of the Borrower's principals, Herbert L. Levine, during a trip to Las Vegas in November 1999. The trial court granted summary judgment in favor of the Lender's Parent on the ground that "there is no evidence that any actions were taken by an agent or representative of, at the direction of, or on the behalf of [the Lender's Parent]." The Lender's Parent, however, did not expressly present this ground in its motion for summary judgment. For this reason, the trial court erred in granting summary judgment on this basis. *See Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 204 (Tex.2002). However, in the interest of justice, this court should affirm the summary judgment based upon the no-evidence ground as to the justifiable-reliance element of the common-law-fraud claim. *See Cates*, 927 S.W.2d at 625–26 (holding that courts of appeals, in the interest of justice, may consider summary-judgment grounds that the movant presented to the trial court but upon which the trial court did not rule in granting the movant a final summary judgment).

According to the Texas Supreme Court, the defrauded party must actually and justifiably rely upon the alleged fraudulent representation. *Ernst & Young*, 51 S.W.3d at 577. The majority opinion states that "[i]n the context of common-law fraud, courts have uniformly treated the issue of justifiable reliance as a question for the factfinder."[6] If there is a genuine issue of material fact as to whether reliance was justifiable in a common-law fraud case, then, of course, the factfinder should determine this issue. But the issue of whether reliance was justifiable in a common-law fraud case does not always have to be determined by the factfinder and may be determined as a matter of law. *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075–76 (5th Cir.1994) (stating in per

curiam, en banc opinion, that regardless of the type of claim being asserted, trial courts must always grant summary judgment where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant); *In re Absolute Res. Corp.*, 76 F.Supp.2d 723, 731 (N.D.Tex.1999) (granting summary judgment as to fraud claim and holding there was no genuine issue of material fact as to whether alleged reliance by plaintiff on alleged oral assurances that loan would be finalized was justifiable); *Bennett v. Cochran*, No. 14–00–01160–CV, 2004 WL 852298, at *6 (Tex. App.-Houston [14th Dist.] April 22, 2004, no pet.) (holding in memorandum opinion that, as a matter of law, there was no evidence to support the jury's finding that plaintiff's reliance was justifiable); *Atlantic Lloyds Ins. Co. v. Butler*, 137 S.W.3d 199, 226–27 (Tex.App.-Houston [1st Dist.] 2004, pet. denied) (affirming summary judgment as to fraud claim because there was no genuine issue of material fact as to whether the plaintiff's alleged reliance was justifiable); *Beal Bank, S.S.B. v. Schleider*, 124 S.W.3d 640, 651–52 (Tex.App.-Houston [14th Dist.] 2003, pet. denied) (holding that there was no evidence to support the jury's finding that plaintiff's alleged reliance on lender's alleged statements was justifiable); *Bluebonnet Sav. Bank, F.S.B. v. Grayridge Apartment Homes, Inc.*, 907 S.W.2d 904, 909 (Tex. App.-Houston [1st Dist.] 1995, writ denied) (holding there was no evidence to support jury's finding that alleged reliance by borrower on alleged oral assurances by lender that loan restructuring proposal would be accepted was justifiable).

Furthermore, the two cases cited by the majority do not support the proposition that justifiable reliance should always be

6. Majority Op., page 30.

determined by the factfinder. *See Coston v. Bank of Malvern*, 991 F.2d 257, 260 (5th Cir.1993) (stating, in per curiam, en banc opinion, that courts in common-law fraud cases treat the issue of justifiable reliance as a question for the factfinder that is subject to deferential, rather than de novo review following trial on the merits); *Hall v. Harris County Water Control & Imp. Dist. No. 50*, 683 S.W.2d 863, 868 (Tex. App.-Houston [14th Dist.] 1984, no writ) (stating that issue of whether reliance was reasonable in a promissory estoppel claim is generally a question of fact). The only explanation given by the majority as to why it concludes there is a genuine issue of material fact regarding the justifiability of the alleged reliance is that the Borrower had a business relationship with the Credit Suisse Parties. Evidence of a business relationship is not by itself sufficient to raise a genuine issue of material fact as to whether the alleged reliance was justifiable. *See Beal Bank, S.S.B.*, 124 S.W.3d at 651–52 (holding that there was no evidence to support the jury's finding that plaintiff's alleged reliance on lender's alleged statements was justifiable despite existence of business relationship between parties); *Bluebonnet Sav. Bank, F.S.B.*, 907 S.W.2d at 909 (holding there was no evidence to support jury's finding that alleged reliance by borrower was justifiable despite existence of business relationship between parties).

Factors used to determine whether reliance was justifiable include the sophistication of the parties and the nature of the transaction. *See Beal Bank, S.S.B.*, 124 S.W.3d at 651–52; *Coastal Bank S.S.B. v. Chase Bank of Texas, N.A.*, 135 S.W.3d 840, 843 (Tex.App.-Houston [1st Dist.] 2004, no pet.). The party claiming fraud must exercise ordinary care to protect its interests and is assumed to know all facts that would be discovered by a reasonably prudent person similarly situated. *Wil-*

*Roye Inv. Co. II v. Washington Mut. Bank, F.A.*, 142 S.W.3d 393, 411 (Tex.App.-El Paso 2004, no pet.). In the context of bargaining between sophisticated and adversarial parties, reliance upon a misrepresentation that easily would be refuted with reasonable diligence is not justifiable. *Atlantic Lloyds Ins. Co. v. Butler*, 137 S.W.3d 199, 226 (Tex.App.-Houston [1st Dist.] 2004, pet. denied); *Coastal Bank S.S.B.*, 135 S.W.3d at 843. A party's failure to exercise care is not excused by mere confidence in the honesty and integrity of the other party. *Coastal Bank*, 135 S.W.3d at 843. Subjective beliefs will not make reliance justifiable. Nor will mere subjective trust transform an arm's length dealing into a relationship that carries a fiduciary duty. *Meyer v. Cathey*, 167 S.W.3d 327, 331 (Tex.2005). Likewise, a cordial business relationship of long duration is not evidence of a confidential or fiduciary relationship. *Farah v. Mafrige & Kormanik, P.C.*, 927 S.W.2d 663, 675 (Tex.App.-Houston [1st Dist.] 1996, no writ). Generally, the relationship between a borrower and a lender is an arm's length business relationship in which both parties are looking out for their own interests.

This court recently examined the issue of justifiable reliance in a lending relationship in *Beal Bank*, a case in which the borrower-plaintiff (Schleider) claimed the lender-defendant (Beal Bank) made an oral agreement to extend the payment time on the Borrower's promissory note despite the original note stating that the loan could only be modified in writing. 124 S.W.3d at 645–46. The borrower had been in business for nearly thirty years and had negotiated several such loans. *Id.* at 652. In rejecting the borrower's fraud claim, this court concluded that an experienced businessman's alleged reliance upon an oral representation by a bank employee was not justifiable as a matter of law. *Id.*

As support for the *Beal Bank* decision, this court cited *Bluebonnet Savings Bank,* a First Court of Appeals decision with a similar fact pattern. The borrower in *Bluebonnet* similarly alleged he had negotiated orally to restructure a loan despite contrary language in the original loan document. 907 S.W.2d at 909. The *Bluebonnet* court held that as an experienced businessman, the borrower should have known not to rely upon these oral representations and therefore his reliance was not justifiable. *Id.* Applying the same rationale, the Borrower's alleged reliance upon the Credit Suisse Parties' alleged oral agreement to fund a new loan was not justifiable.

At the time in question, the Borrower was a partnership headed by an experienced commercial real estate developer (Levine) and, by any relevant measure, was a very sophisticated business party. The Borrower had developed a course of dealing with the Lender through a previous, complex, multi-million-dollar loan transaction in which both parties were represented by counsel. The parties, operating at arm's length, were adversarial, and thus the Borrower was required to exercise ordinary care in its dealings with the Lender and the Lender's Parent.[7]

The summary-judgment record establishes that Levine was familiar with the practices and procedures generally associated with obtaining a commercial loan. For example, he understood that any loan commitments were subject to loan-committee approval, adequate due diligence, and proper loan documentation. More importantly, Levine was familiar with the particular lending practices and procedures employed by the Lender, the Borrower having been through the extensive loan process with the Lender in the recent past in a transaction involving the same property as the alleged oral loan agreement made the subject of the Borrower's fraud claim.

The parties' previous transaction involving a loan secured by the property was memorialized in an eighty-eight-page, single-spaced Loan Agreement negotiated by the parties' lawyers under circumstances in which each party was looking out for its own interests and operating at arm's length in an adversarial context. The Loan Agreement for the original loan was signed only after extensive loan committee procedures required to garner approval for the loan. The transaction was highly structured and extensively documented in a two-volume closing binder consisting of thirty-nine separate documents. The Loan Agreement has a five-page table of contents, more than 225 defined terms, and a dozen pages of covenants required of the Borrower as part of the Lender's agreement to fund the loan. According to the Borrower, the loan orally promised in Las Vegas was to be a mirror image of the previous transaction between the parties.

Before the previous loan closed, the Borrower expressly acknowledged that the loan for which it had applied remained contingent upon approval by the Lender's internal loan committee and the execution and delivery of definitive agreements. The Loan Agreement contained a provision in which the Borrower expressly acknowledged that "no officer or administrator of Lender has the power or authority from Lender to make an oral extension or

---

7. The Borrower suggests that evidence of a longstanding business relationship might establish that its reliance was justifiable. However, the Texas Supreme Court has stated that mere subjective trust does not transform arm's length dealing into fiduciary duty.

*Meyer,* 167 S.W.3d at 331; *see also Farah,* 927 S.W.2d at 675 (holding that a "cordial" business relationship of "long duration" is not evidence of a confidential or fiduciary relationship).

modification or amendment of any [of the Project Loan agreements] on behalf of Lender."

Moreover, in their prior dealings the parties specifically addressed the importance of memorializing in writing any agreements by which the Borrower would seek to bind the Lender. In their previous transaction, the parties addressed the need for writings generally, stating in their Loan Agreement:

> Borrower recognizes that, in general, borrowers who experience difficulties in honoring their loan obligations, in an effort to inhibit or impede lenders from exercising the rights and remedies available to lenders pursuant to mortgages, notes, loan agreements or other instruments evidencing or affecting loan transactions, frequently present in court the argument, often without merit, that some loan officer or administrator of Lender made an oral modification or made some statement which could be interpreted as an extension or modification or amendment of one or more debt instruments and that the borrower relied to its detriment upon such "oral modification of the loan document." For that reason, and in order to protect Lender from such allegations in connection with the transaction contemplated by this Agreement, Borrower acknowledges that this Agreement, the Mortgage, the Note and the other Loan Documents and all instruments referred to in any of them *can be extended, modified or amended only in a writing executed by Lender and Borrower and that none of the rights or benefits of Lender can be waived permanently except in a written document executed by Lender.* Borrower further acknowledges Borrower's understanding that *no officer or administrator of Lender has the power or*

*the authority from Lender to make an oral extension or modification or amendment of any such instrument or agreement on behalf of Lender.*[8]

Thus, as part of their course of dealing, these parties had established through their conduct and interaction a common basis of understanding and a practice of not relying on unwritten promises and agreements in their business relationship.

It is against this backdrop of prior dealings in similar circumstances that we must determine if the Borrower justifiably relied on the Lender's alleged oral promise to loan additional funds on the same property. Likewise, it is the individual characteristics of this Borrower and its appreciation of the facts and circumstances at the time of the alleged fraud that we must consider in determining if the alleged reliance was justifiable. *See Haralson v. E.F. Hutton Group, Inc.,* 919 F.2d 1014, 1026 (5th Cir.1990), *overruled on other grounds, Gustafson v. Alloyd Co.,* 513 U.S. 561, 584, 115 S.Ct. 1061, 1079, 131 L.Ed.2d 1 (1995). As a matter of logic, how could the Borrower have justifiably relied on statements that were belied by its own experience?

Just as the individual borrower-plaintiff in *Beal Bank* was not justified in relying upon the bank's alleged oral representation that it would grant an extension of an existing loan, the Borrower—a sophisticated business entity that had agreed not to rely on unwritten promises in a prior transaction with the same party on the same property—was not justified in relying on the alleged unwritten promise of the Credit Suisse Parties that they would lend additional funds. *See Beal Bank, S.S.B.,* 124 S.W.3d at 651–52. The summary-judgment proof does not raise a genuine issue of material fact as to whether the Borrower justifiably relied on these

---

**8.** Emphasis added.

alleged representations. *See In re Absolute Res. Corp.*, 76 F.Supp.2d at 731; *Beal Bank, S.S.B.*, 124 S.W.3d at 651–52; *Bluebonnet Sav. Bank, F.S.B.*, 907 S.W.2d at 908–09.

The Borrower attempts to distinguish *Beal Bank*, claiming that the additional $6.75 million was not a modification of the original loan but rather an entirely separate loan. Essentially, the Borrower argues that it had no reason to believe that the requirements of the original multi-million dollar loan would apply to this new multi-million dollar loan even though the Borrower alleges that the loan documentation for the latter was to have been a mirror image of the original loan. Knowing that a modification of the existing loan could be enforced only if in writing, and knowing from its own recent experience with obtaining a loan secured by this property, from this lender, that approval from a lending committee was required, the Borrower could not have justifiably relied on an alleged promise that a new loan commitment could be created without a writing and without any of the procedures required with the original loan.

Given the prior dealings between the parties and the Borrower's express, written acknowledgment that no officer of the Lender had the power or authority to make an oral agreement on its behalf, the Borrower could not have justifiably relied on having created an enforceable loan agreement by virtue of oral statements allegedly made during a trip to Las Vegas. Indeed, to the extent the Borrower relied on the alleged oral statements of the Credit Suisse Parties, that reliance was unreasonable in light of the information apparent to the Borrower. Under these circumstances, the law may properly say that any loss is the responsibility of the Borrower. Because the Borrower failed to raise a material issue on an essential element of common-law fraud, the Borrower's fraud claim necessarily fails. This court should overrule the Borrower's challenge to the trial court's summary judgment on the fraud claim and affirm the judgment of the trial court in all respects.