# NO. 12-14-00113-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *CHAD RIEMENSCHNEIDER ET UX REBEKAH RIEMENSCHNEIDER, APPELLANTS* | *§* | *APPEAL FROM THE 349TH* |
| *V.* | *§* | *JUDICIAL DISTRICT COURT* |
| *EAST TEXAS MEDICAL CENTER-CROCKETT, INC. AND TIM MEYER, APPELLEES* | *§* | *HOUSTON COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Chad and Rebekah Riemenschneider appeal the trial court's order dismissing their suit against East Texas Medical Center-Crockett, Inc. (ETMCC) and Tim Meyer. In two issues, the Riemenschneiders argue that ETMCC failed to establish that it was a governmental unit entitled to immunity from suit, and that Meyer did not establish that he is immune from liability as an employee of a governmental unit under the Texas Tort Claims Act (TTCA). We affirm.

## BACKGROUND

In 2008, Chad had an ATV accident resulting in a visit to ETMCC. The Riemenschneiders allege that an MRI showed that Chad had a potential brain tumor, and that the results were conveyed to Meyer, a physician assistant employed by ETMCC. According to the Riemenschneiders, the radiologist strongly recommended that another MRI be conducted in six to eight weeks. They allege that ETMCC and Meyer received this information, but failed to disclose to the Riemenschneiders that Chad had a possible cancerous brain tumor, and failed to schedule a follow up appointment. As a result, they contend, the undiagnosed tumor continued to develop and increase in size. Eventually, Chad had a grand mal seizure and was transported to ETMCC by ambulance. A CT scan revealed that the lesion had increased in size, and he was

transferred to Methodist Hospital in Houston for neurosurgical intervention. Chad's subsequent surgery revealed that the lesion was an "aggressive grade three anaplastic astrocytoma."

The Riemenschneiders filed suit against ETMCC, Meyer, and a treating physician. They settled their claim against the treating physician. ETMCC filed a plea to the trial court's jurisdiction, alleging that it was a "hospital district management contractor," which rendered it a governmental unit entitled to governmental immunity.[1] Meyer filed a motion for summary judgment, asserting that he should be dismissed from the suit since the Riemenschneiders sued ETMCC, a governmental unit, and he is an employee of ETMCC. After a hearing, the trial court granted ETMCC's plea and motion to dismiss, along with Meyer's motion. Consequently, the trial court dismissed the Riemenschneiders' claims with prejudice, and this appeal followed.

## Standard of Review

Governmental immunity from suit defeats a trial court's subject matter jurisdiction and is properly asserted in a plea to the jurisdiction. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225–26 (Tex. 2004). Whether a court has subject matter jurisdiction and whether a plaintiff has alleged facts that affirmatively demonstrate a trial court's subject matter jurisdiction are questions of law. *Id.* at 226. We therefore review de novo a trial court's ruling on a jurisdictional plea. *Id.* This standard mirrors our summary judgment standard under Texas Rule of Civil Procedure 166a(c) and places the burden on the movant to meet the standard of proof to show the trial court lacks subject matter jurisdiction. *Id.* at 22 8. Therefore, we review ETMCC's plea to the jurisdiction and Meyer's motion for summary judgment under the same standard. *See* *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 635 (Tex. 2012).

When a plea challenges the existence of jurisdictional facts, we must consider relevant evidence submitted by the parties to resolve the jurisdictional issues. *Miranda*, 133 S.W.3d at 227. Thus, the trial court may consider affidavits and other summary judgment evidence. *FKM P'ship v. Board of Regents of Univ. of Houston Sys.*, 255 S.W.3d 619, 628 (Tex. 2008). In reviewing a plea to the jurisdiction and a motion for summary judgment, we take as true all evidence favorable to the nonmovant, indulging every reasonable inference and resolving any doubts in the nonmovant's favor. *Miranda*, 133 S.W.3d at 227–28. Once the movant asserts and provides evidentiary support for the plea and motion, the nonmovant is then required to show only that a disputed fact issue exists. *Id.* If the evidence creates a fact question on the

---

[1] *See* TEX. HEALTH & SAFETY CODE ANN. §§ 285.071-.072 (West 2010).

jurisdictional issue, the trial court cannot grant the plea or the motion, the issue is for the factfinder to resolve. *Id.* at 227–28. If the relevant evidence fails to raise a fact question or is undisputed, the trial court rules on the plea and the motion as a matter of law. *Id.* at 228.

## Applicable Law

Governmental immunity protects constitutionally or legislatively-created institutions, agencies, or organs of government from suit and liability. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.001(3)(D) (West 2011); *see also* TEX. SPEC. DIST. CODE ANN. §§ 1078.001-.253 (West 2015) (creating Houston County Hospital District).

The TTCA provides a limited waiver of governmental immunity. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.021 (West 2011). To recover under the TTCA, a claimant must provide proper notice to the governmental unit unless the governmental unit has actual notice of the harm suffered by the claimant. *See id.* § 101.101 (West 2011). The filing of a suit under the TTCA against a governmental unit constitutes an irrevocable election by the claimant and forever bars any suit or recovery by the claimant against any individual employee of the governmental unit regarding the same subject matter. TEX. CIV. PRAC. & REM. CODE ANN § 101.106(a) (West 2011). When a claimant files suit against both a governmental unit and its employee, the employee shall be dismissed from the suit upon the filing of a motion to dismiss by the governmental unit. *Id.* § 101.106(e).

A hospital district management contractor, in its management or operation of a hospital under a contract with a hospital district, is considered a governmental unit under the TTCA. *See* TEX. HEALTH & SAFETY CODE ANN. § 285.072 (West 2010). A "hospital district management contractor" is a nonprofit corporation, partnership, or sole proprietorship that manages or operates a hospital or provides services under contract with a hospital district that was created by general or special law. *Id.* § 285.071 (West 2010). Moreover, an employee of the contractor, while performing services under the contract for the benefit of the hospital, is an employee of the hospital district under the TTCA. *See id.* § 285.072.

## Discussion

The Riemenschneiders concede that ETMCC is a nonprofit corporation and that the Houston County Hospital District (HCHD) is a hospital district created by general or special law that was authorized to contract with a hospital district management contractor to manage or operate the hospital. But they contend that there is no evidence that ETMCC contracted with

3

HCHD to manage, operate, or provide services to the hospital. Consequently, their argument continues, ETMCC cannot be a hospital district management contractor under Section 285.072 and it is not entitled to governmental immunity. Therefore, they conclude, the trial court should have overruled ETMCC's plea to the jurisdiction and motion to dismiss Meyer from the suit, along with Meyer's motion for summary judgment.

On May 5, 1995, HCHD executed a lease with East Texas Medical Center Regional Health Facilities (ETMC Facilities) to supervise, manage, and operate the hospital and its financial and fiscal affairs. Section 6.03(a) of the lease, entitled "Operating Entity," allowed ETMC Facilities or East Texas Medical Center Regional Health System (ETMC System), upon notice to HCHD, to create an entity wholly controlled by them to manage and operate the hospital. Section 6.03 also states that HCHD's consent is not a condition precedent to ETMC Facilities' or ETMC System's assignment of their responsibilities to the new entity. The lease expressly referred to this entity as ETMCC and provided that the definition of "LESSEE" under the lease included ETMCC. The lease allowed ETMC Facilities or ETMC System to assign to ETMCC "such responsibility for the operation of the hospital as LESSEE desired." The lease contemplated that ETMCC would operate the hospital and be "responsible for the day-to-day operations of the hospital."

On June 23, 1995, ETMCC was incorporated. The lease went into effect on July 1, 1995. On December 11, 1995, ETMC Facilities merged into ETMC System. On August 25, 1998, HCHD executed a memorandum of lease as lessor with ETMCC and ETMCC as Lessee. The memorandum of lease defined the "lease premises," through an attached exhibit referenced in the memorandum, as the same property in the original 1995 lease. The memorandum stated that the lease premises were subject to the same terms that were in the 1995 lease and its 1997 modifications.[2] The memorandum expressly provided that all terms of the 1995 lease and its 1997 modifications were incorporated in the memorandum of lease. Furthermore, the memorandum of lease provided for an initial twenty year term with automatic five year extensions absent a specified notice to terminate the lease. The memorandum of lease was signed by HCHD's president of the board and ETMCC's president.

The Riemenschneiders contend that there must be a specific document assigning the lease from ETMCC Facilities to ETMCC. They rely on Section 18.06 of the lease, which requires that

---

[2] The 1997 modifications to the lease do not appear in the record.

4

all alterations or modifications to the lease be in writing, dated, and signed by the parties. The Riemenschneiders cite no authority to support their contention that they have standing to enforce the provisions of the lease. Moreover, the issue under the statute is not whether there is an assignment from ETMCC Facilities to ETMCC. Rather, the issue is whether ETMCC operated or managed the hospital under contract with HCHD at the time of the alleged negligent conduct.

The Riemenschneiders also point to Section 17.01 of the lease, which requires that ETMC Facilities or ETMC System obtain written consent from HCHD for an assignment to a third party. They argue that without written consent for the assignment to ETMCC, the assignment is ineffective. In making this argument, the Riemenschneiders acknowledge that Section 6.03 grants ETMC Facilities or ETMC System the right to create ETMCC, upon notice to HCHD, and assign the lease to it without HCHD's consent.

We apply contract interpretation principles to give effect to the parties' intentions as expressed in the unambiguous provisions of the lease. *See Seagull Energy E & P, Inc. v. Eland Energy, Inc.*, 207 S.W.3d 342, 345 (Tex. 2006); *Meridien Hotels, Inc. v. LHO Fin. P'ship I, L.P.*, 255 S.W.3d 807, 815 (Tex. App.—Dallas 2008, no pet.). If the written instrument is so worded that it can be given a definite or certain legal meaning, then it is not ambiguous, and we will construe the contract as a matter of law. *Coker v. Coker,* 650 S.W.2d 391, 393 (Tex. 1983). Terms are given their plain, ordinary, and generally accepted meaning, unless the instrument shows the parties used them in a technical or different sense. *Heritage Res., Inc. v. Nations Bank*, 939 S.W.2d 118, 121 (Tex. 1996). We must examine and consider the entire writing in an effort to harmonize and give effect to all provisions so that none are rendered meaningless. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003). To the extent of any conflict, specific provisions control over more general ones. *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133–34 (Tex. 1994).

In examining the lease, Section 17.01 and Section 6.03 can be harmonized. The lease, read in context, clearly and unambiguously grants ETMC Facilities or ETMC System the right to assign its duties to ETMCC without written consent. But the lease also provides that if one of those entities were to assign their interest to a true third party not contemplated in the lease, such as in the case of a sale of the lease to an entity unrelated to ETMC, then the entity must obtain written consent from HCHD.

5

Next, as part of its proof, ETMCC submitted the affidavit of Byron Hale, the chief financial officer (CFO) of ETMC System. The Riemenschneiders contend that Hale's affidavit is conclusory and not based on personal knowledge. They failed to object to the affidavit, but contend that their objections are to substantive defects in the affidavit that they may raise on appeal for the first time. *See Dailey v. Albertson's, Inc.*, 83 S.W.3d 222, 226 (Tex. App.—El Paso 2002, no pet.) (describing conflict of authority on issue of whether lack of personal knowledge in affidavit is defect of form or substance, and whether issue may be raised on appeal for first time). Assuming without deciding that they may raise that issue on appeal, we conclude that the affidavit sufficiently establishes Hale's personal knowledge of the facts relevant to our inquiry in sufficient detail.

In Hale's affidavit, he states that he is the CFO of ETMC System, and that he has personal knowledge of the facts from October 1998 to the present. The Riemenschneiders contend that since he was not the CFO at the time the assignment took place, and since he stated that he acquired personal knowledge approximately two months after the memorandum of lease was executed, his affidavit is incompetent evidence. But an employee may gain personal knowledge of the company's practices, procedures, and dealings, even if they were instituted or occurred prior to the time he was hired. *See Dickey v. Club Corp. of Am.*, 12 S.W.3d 172, 176 (Tex. App.—Dallas 2000, pet. denied) (discussing that although affiant was not employed at country club when plaintiffs joined, his affidavit makes clear that as general manager, he acquired knowledge of club's policies and bylaws through his employment, and his affidavit was sufficient). And, as we have stated, the relevant inquiry is whether ETMCC operated or managed the hospital while under contract with HCHD, and implicitly under the statute, at the time of the alleged malfeasance.

Hale established that, in his capacity as CFO at ETMC System, he knew that ETMCC operated or managed the hospital under contract with HCHD at the relevant time. An affiant's position or job responsibilities can qualify him to have personal knowledge of facts and establish how he learned of the facts. *See, e.g., 1001 McKinney Ltd. v. Credit Suisse First Boston Mortg. Capital*, 192 S.W.3d 20, 27 (Tex. App.—Houston [14th Dist.] 2005, pet. denied) (stating the affiant's personal knowledge "resulted from his employment as director of the Controller's Division of CSFB, which keeps records of all licenses and government approvals").

6

Moreover, Hale's affidavit is not conclusory. A conclusory statement in an affidavit is one that does not provide the underlying facts to support the conclusion. *1001 McKinney Ltd*, 192 S.W.3d at 27. Hale explained that the 1995 lease has remained in effect from 1995 to the present, ETMC Facilities assigned its obligations to ETMCC as contemplated in Section 6.03 of the lease, and that the assignment continued when ETMC Facilities merged into ETMC System. He also explained that ETMCC has continuously provided hospital operations under the lease from 1995 to the present day. We conclude that Hale's affidavit established in sufficient detail, based on his personal knowledge at the relevant time, that ETMCC managed or operated the hospital under contract with HCHD.

In summary, the statements by Hale in his affidavit that ETMCC operated the hospital under contract with HCHD at the time of the conduct allegedly causing Chad's injury, along with the memorandum of lease, its incorporation of the original lease, and the original lease's contemplation of this arrangement and naming ETMCC as a lessee, satisfy ETMCC's burden to prove that it operated or managed the hospital under contract with HCHD at the relevant time. *See Christus Spohn Health Sys. Corp. v. Ven Huizen*, No. 13-10-400-CV, 2011 WL 1900174, at *5 (Tex. App.—Corpus Christi May 19, 2011, pet. denied) (mem. op.) (holding that nonprofit corporation's agreement with county hospital district authorizing corporation to operate hospital, along with controller of finance's affidavit stating that corporation operated hospital under contract, established that it was hospital district management contractor, and that plea to jurisdiction was properly granted). Therefore, we hold that ETMCC was a hospital district management contractor at the time of the alleged wrongful conduct, and it is entitled to governmental immunity. *See* TEX. HEALTH & SAFETY CODE ANN. § 285.072.

It is undisputed that the Riemenschneiders did not provide notice of their claim to ETMCC. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.101. Furthermore, they do not allege a claim for which immunity from suit is waived by the TTCA, namely, that the acts or omissions involve a use or misuse of tangible personal property. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.021; *see also Univ. of Tex. Med. Branch v. York*, 871 S.W.2d 175, 179 (Tex. 1994) (failure to follow documented recommendation regarding a hip x-ray did not involve a use or misuse of tangible personal property); *Univ. of Tex. Med. Branch v. Mullins*, 57 S.W.3d 653, 657 (Tex. App.—Houston [14th Dist.] 2001, no pet.) (failure to advise patient of test result

showing positive HIV status was not a use or misuse of tangible personal property). Accordingly, the trial court properly granted its plea to the jurisdiction.

Finally, Meyer, who is undisputedly an employee of ETMCC, is likewise an employee of a governmental unit. *See* TEX. HEALTH & SAFETY CODE ANN. § 285.072. The Riemenschneiders initially filed suit against ETMCC, and later added Meyer as an additional defendant. The trial court properly granted Meyer's motion for summary judgment and ETMCC's motion to dismiss because the Riemenschneiders irrevocably elected to sue only ETMCC when they filed suit against it. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.106(a), (e).

The Riemenschneiders' first and second issues are overruled.

## DISPOSITION

Having overruled the Riemenschneiders' first and second issues, we ***affirm*** the trial court's order dismissing their claims, with prejudice, against ETMCC and Meyer.

GREG NEELEY
Justice

Opinion delivered December 30, 2015.
*Panel consisted of Worthen, C.J., Neeley, J., and Bass, Retired J., Twelfth Court of Appeals, sitting by assignment.*

(PUBLISH)

8



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**DECEMBER 30, 2015**

**NO. 12-14-00113-CV**

**CHAD RIEMENSCHNEIDER ET UX REBEKAH RIEMENSCHNEIDER,**
Appellants
V.
**EAST TEXAS MEDICAL CENTER-CROCKETT, INC. AND TIM MEYER,**
Appellees

Appeal from the 349th District Court
of Houston County, Texas (Tr.Ct.No. 12-0006)

THIS CAUSE came to be heard on the oral arguments, appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that all costs of this appeal are hereby adjudged against the Appellants, **CHAD RIEMENSCHNEIDER ET UX REBEKAH RIEMENSCHNEIDER,** for which execution may issue, and that this decision be certified to the court below for observance.

Greg Neeley, Justice.
*Panel consisted of Worthen, C.J., Neeley, J. and Bass, Retired J., Twelfth Court of Appeals, sitting by assignment.*